## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT

### OF

# NORTH DAKOTA

LEONARD STOCKWELL v. J. W. BRINTON.

(142 N. W. 242.)

This is a civil action to recover damages for an alleged unjustifiable assault upon plaintiff by defendant. Defendant denied the assault, and sought to justify any injuries inflicted by him upon the plaintiff as done in his necessary self-defense. The jury found in favor of defendant by a general verdict. Plaintiff appeals. It is *held:*—

**Assault — action for damages — justification — self-defense.**

1. No reversible error appears in the admission or exclusion of testimony; many rulings complained of examined.

**Assault — weapon — presumption.**

2. It not appearing from the record that any request or demand was made upon defendant, his counsel or any witness for defendant for the production of the weapon admittedly used by Brinton, no presumption can be indulged in that the same had been secreted and that evidence had been suppressed.

**Instructions — punitive damages.**

3. Any error in the instructions concerning punitive damages cannot amount

Note. — The authorities on the right to limit the time of argument of counsel for accused are collated in a note in 25 L.R.A.(N.S.) 1027, and in a supplement note in 42 L.R.A.(N.S.) 209. See also note in 46 Am. St. Rep. 23.

26 N. D.—1.

to reversible error, as the jury have by their verdict found no actual damages **to** have been unlawfully sustained by plaintiff at the hands of defendant.

**Error — jury — instructions.**

4. No error was committed in refusing the requested instructions reviewed on assignments of error.

**Conflict of evidence — verdict.**

5. Under the conflict of evidence as to the affray, there is sufficient proof to sustain the verdict.

**Arguments limited by court — submitting case to jury without — objections waived.**

6. By waiving right of argument upon facts to the jury at the close of the trial, after the court had limited the respective counsel to forty-five minutes for argument on each side of the case, they thereupon stipulating to and thereunder submitting the cause to the jury without argument, all objection to the time limit so imposed was thereby waived.

Opinion filed May 31, 1913.   Rehearing denied July 5, 1913.

From an order of the District Court for Billings County, *Nuchols,* Special Judge, presiding, denying new trial, plaintiff appeals.

Affirmed.

*M. A. Hildreth,* for appellant.

The court's charge upon the question of damages is clearly erroneous. Punitive damages may be recovered without the showing of *actual malice.*   Penal Code 1905, § 9524; Rev. Codes 1905, § 6562; Shoemaker v. Sonju, 15 N. D. 518, 108 N. W. 43, 11 Ann. Cas. 1173; Fotheringham v. Adams Exp. Co. 1 L.R.A. 474, 36 Fed. 252; White v. Spangler, 69 Iowa, 222, 26 N. W. 85.

Malice may be inferred from an act or acts of the defendant, and the weapon used by defendant at the time of the assault, and his general conduct, as well as previous threats, are all proper matters of proof.   Fotheringham v. Adams Exp. Co. supra; Selland v. Nelson, 22 N. D. 14, 132 N. W. 220.

There was a conspiracy between Haigh and defendant to injure plaintiff, and *evidence* of such fact was admissible.   State v. Anderson, 92 N. C. 737; State v. Stark, 63 Kan. 529, 54 L.R.A. 912, 66 Pac. 243; 1 Wharton, Crim. Law, 702; 3 Greenl. Ev. 95; Taylor, Ev. 527;

Place v. Minster, 65 N. Y. 89; People v. Sharp, 45 Hun, 460; State v. Winner, 17 Kan. 298; Cox v. State, 8 Tex. App. 302, 34 Am. Rep. 746; Avery v. State, 10 Tex. App. 210; Heard v. State, 9 Tex. App. 1.

Statements made by a party to a common scheme of conspiracy to do a wrong are admissible. State v. Gilmore, 151 Iowa, 618, 35 L.R.A. (N.S.) 1084, 132 N. W. 56; Joyce v. State, 88 Neb. 599, 130 N. W. 291; Clinton v. Estes, 20 Ark. 216; Miller v. Dayton, 57 Iowa, 423, 10 N. W. 817.

It is always competent to show that parties have fabricated or suppressed evidence. Cover v. Com. 5 Sadler (Pa.) 79, 8 Atl. 196; Underhill, Crim. Ev. § 121, and notes; Moore, Facts, § 585, and cases cited. Miller v. Dayton, 57 Iowa, 423, 10 N. W. 817; Barber v. State, — Tex. Civ. App. —, 69 S. W. 515; 3 Enc. Ev. 432, 433; Musser v. State, 157 Ind. 423, 61 N. E. 1; Fitzpatrick v. United States, 178 U. S. 304, 44 L. ed. 1078, 20 Sup. Ct. Rep. 944; People v. Cleveland, 107 Mich. 367, 65 N. W. 216; Pierson v. State, 18 Tex. App. 524; Allen v. State, 12 Lea, 424; Abbott, Trial Brief, Crim. Cas. 274, 275.

Where defendant in an assault case attempts to justify his acts, he must do so by a preponderance of the evidence. As to this, the burden of proof is upon defendant. Sellman v. Wheeler, 95 Md. 751, 54 Atl. 515; Gizler v. Witzel, 82 Ill. 326; Johnson v. Strong, 22 Ky. L. Rep. 577, 58 S. W. 430; Phillips v. Mann, 19 Ky. L. Rep. 1705, 44 S. W. 379; Rhinehart v. Whitehead, 64 Wis. 42, 24 N. W. 401.

Haigh was an abetter and encouraged the affray, and was jointly liable. People v. Yslas, 27 Cal. 630; Cooley, Torts, 186; Hilmes v. Stroebel, 59 Wis. 74, 17 N. W. 539; Bishop, Non-Contract Law, § 535; Brown v. Perkins, 1 Allen, 89; Little v. Tingle, 26 Ind. 168; State v. Speyer, 182 Mo. 77, 81 N. W. 433; Darling v. Homer, 16 Mass. 289; Sexton v. Rhames, 13 Wis. 99; Eastman v. Porter, 14 Wis. 49; Druecker v. Salomon, 21 Wis. 632, 94 Am. Dec. 571; United States v. Kane, 23 Fed. 748; State v. Jones, 83 N. C. 605, 35 Am. Rep. 586; Lamb v. People, 96 Ill. 73.

*L. A. Simpson,* for respondent.

The questions in this case were for the jury, and the order of the trial court overruling plaintiff's motion for a new trial should not be

disturbed. Nilson v. Horton, 19 N. D. 187, 123 N. W. 397, and cases cited.

Where the evidence is conflicting,—the jury being sole judges of its weight, and of the credibility of the witnesses,—the verdict should not be disturbed. Bailey v. Walton, 24 S. D. 119, 123 N. W. 701.

Where different conclusions may be drawn from the evidence, the finding of the jury is conclusive. Berry v. Chicago, M. & St. P. R. Co. 24 S. D. 611, 124 N. W. 859; Coughran v. Western Elevator Co. 22 S. D. 214, 116 N. W. 1122.

Where the verdict is supported by substantial evidence, and the trial court having refused to disturb it, such ruling will be sustained. Acton v. Fargo & M. Street R. Co. 20 N. D. 434, 129 N. W. 225.

The matter of limiting counsel in their argument to the jury is wholly discretionary with the trial court. Sylvester v. Jerome, 19 Colo. 128, 34 Pac. 760; 2 Enc. Pl. & Pr. 702 and cases cited; Selland v. Nelson, 22 N. D. 14, 132 N. W. 220; Kerley v. Gernscheid, 20 S. D. 363, 106 N. W. 136.

Goss, J. The complaint alleges that the defendant, Brinton, on August 22, 1909, in Beach, North Dakota, "did make a violent assault upon plaintiff and did with a billy or bludgeon wilfully and unlawfully strike, beat, and wound the plaintiff over and about the left arm and left side of the head, then and there inflicting upon the plaintiff great injuries to his head and arm, to the damage of the plaintiff in the sum of $5,000." Defendant by answer denies the assault and injuries, but alleges that the plaintiff wilfully and maliciously assaulted him, defendant; and that if plaintiff received any injuries from defendant the same were inflicted while plaintiff was unlawfully assaulting defendant, and that any injuries suffered were inflicted by defendant in the necessary defense of his person from the unlawful assault made upon him by plaintiff. The jury found for defendant by a general verdict. Plaintiff appeals from an order denying a new trial, assigning error in the admission and exclusion of testimony and instructions given and refused.

It appears that upon the day in question, and prior to the altercation made the basis of this suit for damages, Stockwell and Brinton met in the early afternoon, when a difficulty arose and the parties grappled,

Brinton being thrown to the ground with Stockwell upon him. They were separated. Some hours thereafter, and about 6 o'clock the same day, a second encounter ensued. Concerning who was then the aggressor the testimony is in dispute, each claiming the other to have been. Between the two affrays defendant had armed himself with a billy, and at the second *mêlée* used it to considerable effect upon the head and arm of the plaintiff. When they were then separated, the billy was taken into possession by its owner, Haigh. Defendant testifies to taking the club to his office some time before the day in question, but after the publication by him in his newspaper of matter concerning plaintiff, which answered an article previously caused to be published by Stockwell. It appears that Haigh and Brinton had talked over these published articles and the possibility of trouble between Brinton and Stockwell when they met, and defendant, in order to be prepared for emergencies that might arise, had procured the club from Haigh's office and taken it to his newspaper office, in readiness for anticipated trouble, and from which place he got it between the altercations that took place upon the day in question. Both affrays occurred in the afternoon of August 22, 1909, and upon the streets of Beach, in the presence of many bystanders, a dozen or more of whom have testified in this action.

Error is grouped under many assignments, discussed as follows in the order taken: Defendant was called for cross-examination under the statute as the first witness, and among other things had testified in substance that he had gone over to Haigh's office and "helped myself to the club." Whereupon the question was asked: "You never told him where it was?" to which the court sustained an objection. Haigh subsequently testified that "I told Brinton the club was there (in my office), because I believed that Stockwell was going to pitch onto him. Guess I told him the billy was on the side of the wall (of my office); and again: "When I talked with him about looking out for Stockwell, about this article, I said something about the billy. I had warned him on account of this former talk with Stockwell. He could do as he saw fit about arming himself with it." Defendant admits he took it pursuant to such permission, in anticipation of the trouble subsequently had; so any error in the ruling, conceding the same to have been error, was subsequently cured. Both parties were fully examined, touching

all phases of this matter inquired about. On this assignment counsel for appellant states: "We started in the beginning to find out what had become of this weapon." The alleged error has nothing to do with the question of what became of the bludgeon, and could not have been so understood.

Counsel's second assignment is based upon the exclusion of the following, asked of Webber: "Could you tell from that point of vantage in which direction these blows were falling, as to what portion of the body of Stockwell, as to whether they were aimed at his head or his neck or his arm?" The witness had previously testified on the subject that defendant "walked out to him and hit him on the head with a club, . . . followed him up, striking him, and Stockwell guarding with his left arm, backing away, Brinton following, striking him,—landing on Stockwell mostly on the left arm. There was blood on the side of Stockwell's face; probably half the side of the face was discolored by blood. I did not see his arm closely at that time." Witness was testifying to events occurring from 150 to 180 feet from him, and concerning events described in detail by a dozen witnesses and a circumstance merely of the affray. Any error must be nonprejudicial under such circumstances. In the cross-examination of this witness he was asked: "Where did Stockwell have his hands at that time he was facing Brinton and saying something to him?" to which the plaintiff objected on the ground that "it assumes that Stockwell was saying something to Brinton, and the witness has testified that he could not tell who was talking." This is assigned as error. Witness had just testified that Stockwell had "walked in a southeasterly direction, stopped, turned, and faced Brinton. There were some words passed between them. He turned and faced Brinton; stood still a few feet from him." This is a sufficient basis in the testimony to warrant the question on cross-examination. The same witness was asked on cross-examination: "Can you tell us just where Mr. Brinton was when you think you saw Haigh jerk the club out of Murphy's hands?" To this question counsel interposed the objection "that the question assumed that the witness had said that he thought Haigh jerked the club out of Murphy's hands." The issue was whether the club had been taken from Brinton or Murphy. Witness had previously testified: "I was up closer when Murphy took the club from Brinton. Did not see Haigh

come out of the drug store, not until he was trying to grab the club. He was trying to take the club away from Murphy. Did not notice Brinton's hands on the club after Murphy had it. Murphy and Brinton were fighting over the club." And after the objection was overruled this answer, explanatory of the matter, was given: "Brinton was right on the other side of Murphy when Haigh jerked the club out of Murphy's hands. Haigh was at Murphy's left; the club was in Murphy's hand. All three were trying to get it. It was my understanding that Haigh jerked it out of Murphy's hands." The answer shows conclusively that the witness was not misled by the question, and the objection discloses that one purpose for the making of it may have been to see that the witness did not get misled. The question was asked upon cross-examination and was legitimate, being one way to test the knowledge of the witness as to who, then, had possession of the club. But conceding the ruling to have been error, the witness was not misled, his answer corresponding with his previous testimony and the plaintiff's theory of the case; and manifestly the ruling did not result to plaintiff's prejudice. This same witness, after testifying, "I feel friendly toward Mr. Brinton, ever since I knew him," was asked, on cross-examination, this question, the answer to which, over objection, is assigned as error: "Let's see; you were one of those who joined in asking the government to appoint him postmaster, or did you refuse to do it?" Plaintiff's counsel in his brief says that this question was asked "to get as much venom into the case as he could." This line of examination was permissible to determine the amount of "venom," bias, or prejudice had by the witness toward Brinton, and bore directly upon the credibility of the witness in this specific case, as has been held in State v. Malmberg, 14 N. D. 523, 105 N. W. 614; and State v. Kahallek, — N. D. —, 140 N. W. 1135. Witness Bond had described at length the billy, and had testified that "there was a strap attached to it,—to the small end." He was thereupon asked by counsel for the plaintiff, "Do you know what the strap on a billy is for?" objection to which question was sustained and is assigned as error. The ruling was discretionary, and, if error, was nonprejudicial as concerning a matter of so common knowledge that such proof was wholly unnecessary. Another assignment of error concerns the following questions asked of witness Bond, a justice of the peace, called on behalf

of plaintiff, and based upon the overruling of plaintiff's objections to the following questions asked upon cross-examination: "And he (Brinton) was brought before you (under arrest) a few days before he was married, about midnight on Saturday night?" and "what time the second time, getting towards morning?" We have inserted the words in parenthesis to render the meaning intended. The witness answered the first question as follows: "Somewhere between—around 4 o'clock in the afternoon, between 4 and 5, the first time." And to the second question he says: "Do not know exactly what time it was; I had not been to supper yet." Nothing prejudicial to plaintiff is apparent from this testimony received over plaintiff's objection. The same witness was asked on cross-examination: "Is that as true as anything you have stated here on the stand?" concerning some testimony he had given. Plaintiff interposed an objection; no ruling was made and no answer appears to have been given to the question. We can see no error resulting to plaintiff's prejudice in the mere asking of this question. It is a question frequently asked in cross-examination, and is objectionable in that it asks a witness to compare his testimony, but rarely, if ever, is it prejudicial error. The justice on cross-examination also was asked: "The following Monday was a legal holiday, was it not, Mr. Bond?" and "you know Labor Day was a legal holiday?" referring to the Monday after the arrest on Saturday of Brinton, referred to in preceding questions. Error is assigned. This cross-examination was for the declared purpose of counsel "to show bias" on the part of the justice, and was proper cross-examination for that purpose. The same witness was asked the question on cross-examination: "You have never done that which he did not think was right?" to which witness answered over objection: "Well, possibly I have," also assigned as error. This interrogatory followed cross-examination upon the personal relations and feelings of Bond and Brinton, and the ruling was correct. Counsel for defendant on cross-examination of the same witness, with reference to a criminal trial prosecuted for this assault against Brinton, asked the question: "Well, the jury cleared him, did they not?" to which objection was interposed and sustained, and at plaintiff's request the jury were fully cautioned to disregard the question, the court stating: "I shall not pass upon that feature any further than to say to the jury that the question as to whether or not the defendant was convicted in

any criminal proceedings growing out of the matters alleged in this action is not admissible in evidence in this case and ought not to be considered by you one way or the other." Counsel should not have asked the question, and the ruling of the court excluding the answer, and its action in cautioning the jury, were manifestly proper and fully safeguarded the rights of the plaintiff. Dr. Smith was sworn as a witness in plaintiff's behalf, and testified to making a professional examination of plaintiff, soon after the last *mêlée* on the day in question, and described in detail the injuries plaintiff had received, and that in his opinion they were contusions, and the result of blows received from a weapon of the character shown by the evidence to have been wielded by Brinton that day. Upon cross-examination he was asked: "The wounds that you saw on Stockwell's arms and face, were they or were they not dangerous?" to which he answered: "Well, that might depend, they evidently did not prove to be dangerous;" the latter part of which answer counsel for plaintiff moved to strike as irresponsive, incompetent, irrelevant, and immaterial, the denial of which is assigned as error, counsel in his brief urging that the use of the weapon in question was a circumstance "leading up to the fact that a violent assault had been made upon the plaintiff by the defendant with a dangerous weapon;" and that this question, and the subsequent examination of the witness permitted along the same line, were error. The witness, immediately thereafter, explained that the wounds plaintiff received were not dangerous, describing them minutely. The rulings were correct. The witness was offered to prove the physical condition of plaintiff immediately after the altercation, and testified concerning the wounds, their nature and the character of the weapon from which they were probably received. And no good reason exists why the expert should not be allowed, on cross-examination, to pronounce his opinion upon the dangerous or trivial character of the wounds concerning which he has testified in detail. This action is for damages, and the testimony of the witness was offered presumably as a basis for an award of substantial damages; and therefore, to have excluded the question asked on cross-examination, had a recovery been had, would manifestly have been error. On redirect examination immediately following, counsel for plaintiff asked: "Doctor, I will ask you as to whether or not in your opinion such blows by the use of such an in-

strument as has been described here were dangerous or otherwise to the life and limb of Stockwell ?"   The court sustained an objection, because the same question had been asked and answered on direct and cross-examination.   The ruling was discretionary and nonprejudicial inasmuch as the witness had been fully examined both on direct and cross-examination touching the same matter, and no useful purpose would have followed further redirect and recross-examination necessarily following, concerning the matter already testified to in detail.

A dozen or more assignments revolve around the testimony and offers of testimony concerning the billy or policeman's club.   This is described as being from a foot to 15 inches long, weighing a pound or a pound and a half, loaded, made of leather, with a strap on the handle. Naturally its size and importance is not magnified by the defendant, but it is described in detail and given much attention by the plaintiff and his witnesses.   It was not produced upon the trial, and counsel for plaintiff argues strenuously that its suppression by the defendant, and his inability to procure and cause the production of the same, together with the fact of Haigh being its owner and its being taken by defendant from Haigh's office in preparation for the affray, is evidence (1) that Haigh and the defendant had entered into a conspiracy to beat Stockwell with the billy; (2) that there was sufficient evidence from which the acts and declarations of Haigh concerning the affray, made soon thereafter, were admissible and should have been admitted in evidence; and (3) that because Haigh received possession of the club after the assault, and has not produced it, he has suppressed evidence concerning which certain rulings of the trial court constituted error.

All of the assignments and arguments thereon, based upon the suppression of testimony because the club was not produced on the trial, are disposed of by mention of the fact that counsel for the plaintiff has at no place, as appears from the record, demanded the production of this club.   He has assumed, evidently, that it could not be produced, but nothing appears in the record upon which to base such an assumption.   Haigh testifies under cross-examination: "I carried the billy home with me; didn't bring it down with me this morning; have not searched for it; have not seen it since March, 1910; don't know whether I saw it at that time or not; laid it on the shelf in the cellar, on the south side near the coal bin; cannot tell when I saw it last; it was some time

after this affair; don't remember just when it was." This is important, because counsel for plaintiff contends his cross-examination was curtailed unduly in that a conspiracy existed between Haigh and Brinton under which Brinton took the club from Haigh's office some time previously for use in making this alleged malicious assault upon plaintiff; and that Haigh recovered it immediately after the fracas, to keep it from being used as evidence on this trial. For aught we can tell, this club might have been in Haigh's cellar, where that witness says he last saw it, and could have been produced by defendant upon demand had counsel requested it. And it is apparent that the trial court evidently had this in mind in his rulings upon the subject. Counsel's contention on this score cannot be upheld, being based upon matters without the record. Concerning the offers of proof made in this connection the court properly refused to rule upon blanket offers of proof, insisting that the offer be made by questions asked of witnesses. This disposes of three assignments of error. If trial courts generally would follow such precedent, and generally refuse to rule on the admission of testimony offered by blanket offers, much opportunity for getting reversible error in the record would be thus foreclosed. The court at first sustained objections to inquiries seeking to elicit statements made by Haigh some five minutes after the fracas and some distance from the scene of the altercation, as not a part of the *res gestæ,* and not binding upon the defendant. Several assignments of error are based upon this exclusion, but it is wholly unnecessary to review the correctness of the holding, because the court, later in the course of the trial, reversed its former ruling, and permitted full examination upon that subject, conclusively shown by the following testimony:

Haigh was asked by counsel for plaintiff, with reference to this event:

Q. Did you have any conversation after going back on the sidewalk with Mr. Murphy?

A. Yes.

Q. What did you say to Murphy when you got back on the sidewalk?

A. I said it was mine, I guess I said it was mine.

Q. You said it was yours?

A. Yes.

Q. Well, now, did you not state to Murphy something like this, "you said it was yours;" he said, that is, Murphy said, "If I had known that you wouldn't have got it," and did you not reply: "I and my friends intended to take it?"

A. No, sir, I didn't.

And the court also permitted counsel for plaintiff to show that the witness Haigh was convicted for assault and battery on Stockwell, because of this assault by Brinton and his complicity with Brinton therein.

Thereafter Murphy, who previously had been inquired of concerning the statements of Haigh to him regarding the club, after the *mêlée*, was called in rebuttal and testified fully upon the subject, as will appear from the following testimony of Murphy:

Q. Mr. Murphy, you may state if after Haigh had taken the billy away you had any conversation with him up on the sidewalk?

A. Yes, sir.

Q. Did he state in that conversation that the billy was his? And did Mr. Haigh state to you when you got back on the sidewalk that the billy was his, and you replied that, if you had known that, you would not have let him have it; and did he not, replying, say that his friends were there to take it away if it were necessary, or that in substance?

A. Yes. He said he had friends enough there to get it.

Any error in the exclusion of this testimony early in the trial must have thus been cured. Toward the close of the trial Haigh was recalled for further cross-examination, and testified that on his way home that evening he showed the billy to Lovell, a witness of plaintiff, and then was asked: "Did you make any statement to him at that time as to what had been done with that billy?" to which an objection was sustained. Thereupon counsel made the following offer: "The plaintiff offers to cross-examine the witness Haigh as to any statements that he made to Lovell on the stand, and to ask him directly as to whether or not he didn't state to Lovell, and at the same time exhibit to him the billy, and state in substance that that was the billy with which Brinton had beaten Stockwell up that night; and in the event that Haigh

denies that he made such a statement to Lovell to recall Lovell and ask Lovell if Haigh didn't state to him, while he was showing him the billy, that it was the billy with which Brinton had beaten Stockwell up a few minutes before." This was some minutes after the fracas and a block and a half distant from that occurrence. The court held the testimony incompetent, irrelevant, and immaterial for any purpose. No issue had been made or tendered on the matter embraced in the offer. On the contrary, Brinton and many witnesses had detailed the events, and it was an undisputed fact in the case that Brinton had used this billy, as he himself admits, upon Stockwell at the time in question. And had the witness Haigh been permitted to relate his hearsay statement to Lovell, it would have been but repetition of what he has testified to concerning the billy, and that Brinton had beaten Stockwell with it. This offer of hearsay testimony was properly excluded. Concerning the billy the witness Haigh was asked: "You did not produce it at the trial of the State against Haigh, did you?" And again: "Were you down to Mandan on the case of State against Brinton?" To both questions objections were sustained, and properly so, as the answer sought was wholly immaterial. From the entire record it does not appear but what counsel for the defendant, or the defendant himself, may have been ready on demand to produce the billy. After a careful examination of all the rulings on the admission and exclusion of evidence, no prejudicial error appears.

Counsel has challenged in ten particulars the sufficiency of the evidence to sustain the verdict, bearing upon the preponderance of the evidence and the right of Brinton to make self-defense with the weapon used or at all. There was a square conflict in the testimony, regarding all these matters. The testimony of the defendant and his witnesses, evidently accepted by the jury as the true version of the affray, laid ample foundation for the verdict rendered.

Appellant also has assigned as error the action of the trial court in announcing at the close of the testimony that counsel on each side would be limited in argument to forty-five minutes, to which statement or direction plaintiff excepted, and immediately, presumably because thereof, entered into an agreement with opposing counsel to submit the cause to the jury for their determination without argument by either side, both counsel waiving thereby their right of argument.

And the cause was forthwith submitted. By this act of waiver of right of argument to the jury, any error in the limit previously fixed upon the length of argument was waived. Before counsel can complain for not being permitted to make an extended argument, he should at least have used the time allowed him for that purpose, instead of failing to avail himself of even such limited right by waiving altogether his right of argument. The whole matter is one resting within the sound discretion of the trial judge, and the best proof of the necessity for more than forty-five minutes' argument would have been a good-faith attempt on the part of counsel to comply with the court's direction and sum up the case within that time. Had counsel then been unable to do his cause justice, we cannot assume but what the court would have granted further time if such fact became apparent. From the size of the typewritten statement of the case, containing 185 pages only as the record of the testimony, it would seem that such limitation upon argument imposed was a reasonable one. Much less time allowances have been sustained as granting a reasonable opportunity for argument, even in criminal cases, in the face of the objection that unduly limiting argument is in effect a denial of the constitutional right of counsel in criminal prosecutions. Seattle v. Erickson, 55 Wash. 675, 25 L.R.A. (N.S.) 1027, 104 Pac. 1128, where a fifteen-minute limit was held not unreasonable. See also extended note to the same case in 25 L.R.A. (N.S.) 1027. The right of the court to limit argument is similar to its right to limit too extended cross-examination, upon which see State v. Foster, 14 N. D. 561, 105 N. W. 938. The right of argument should not be unduly curtailed, nor unduly encroached upon by the court, as has been held where the instructions were given to disregard entirely statements made by counsel in argument. State v. Gutterman, 20 N. D. 432, 128 N. W. 307, Ann. Cas. 1912 C, 816; and Zilke v. Johnson, 22 N. D. 75, 132 N. W. 640. But counsel can here urge no error after his waiver of such right.

In its instructions upon exemplary damages the court distinguished between actual and implied malice, and in so doing may have erred under the holding of this court in Shoemaker v. Sonju, 15 N. D. 518, 108 N. W. 42, 11 Ann. Cas. 1173. But any error so committed in instructions concerning exemplary damages only is rendered nonprejudicial by the verdict finding no cause of action to have existed for com-

pensatory or actual damages. Under the issues joined to return such a verdict for defendant, the jury must have found either that the defendant did not assault the plaintiff, or, on the contrary, that plaintiff was the aggressor and assaulted defendant; or, the equivalent of the latter, that any injuries inflicted upon plaintiff by defendant were done in his necessary self-defense in repelling an unlawful assault made by plaintiff upon him, defendant. Under the authorities a right of action for punitive damages did not exist where a right of action as to actual damages is thus found never to have existed. 1 Sedgwick on Damages, § 361, from which we quote: "If the plaintiff has suffered no actual loss, he cannot maintain an action merely to recover exemplary damages. A plaintiff has no right, the courts say, to maintain an action merely to inflict punishment; exemplary damages are in no case a right of the plaintiff, and cannot therefore become a cause of action." To the same effect is 2 Sutherland on Damages, 3d ed. § 406, reading: "Bad motive by itself is not a tort. Malicious motives make a bad act worse, but they cannot make that a wrong which in its own essence is lawful. . . . Actual damage must be found as a predicate for the recovery of exemplary damages." See also 1 Joyce on Damages, § 123, reading: "A right of action cannot be maintained simply for the purpose of inflicting punishment upon some supposed wrongdoer, and therefore exemplary damages are not recoverable unless there has been some real or actual damage sustained. Exemplary damages are merely incidents of a cause of action to recover damages for some real or substantial loss, and can never constitute the basis of a cause of action independent of such elements, though the act of the defendant may have been wanton or malicious. It therefore follows that if no actual damage has been suffered, or if the damage has been merely nominal, the injury being purely technical, exemplary damages should not be allowed. And where the actual damages awarded by a verdict are remitted before judgment, the court is deprived of the power to render judgment for the exemplary damages awarded by such verdict." See also 13 Cyc. 109, that, "although the courts have not been uniform in awarding exemplary damages where the injury is purely nominal, yet where the law implies sufficient damages to sustain an action, it has been held sufficient ground to warrant the imposition of vindictive damages. But as a rule it must be shown by the evidence that actual damages are due."

Sondegard v. Martin, 83 Kan. 275, 111 Pac. 442; Adams v. St. Louis & S. F. R. Co. 149 Mo. App. 278, 130 S. W. 48; Malin v. McCutcheon, 33 Tex. Civ. App. 387, 76 S. W. 586; Rogers v. O'Barr, — Tex. Civ. App. —, 76 S. W. 593; Stewart v. Smallwood, 46 Tex. Civ. App. 467, 102 S. W. 159; Lightfoot v. Murphy, 47 Tex. Civ. App. 112, 104 S. W. 511; Seal v. Holcomb, 48 Tex. Civ. App. 330, 107 S. W. 916; Beckham v. Collins, 54 Tex. Civ. App. 241, 117 S. W. 431; Thowron v. Skirvin, 57 Tex. Civ. App. 105, 122 S. W. 55.

Contra: Vlasservitch v. Augusta & A. R. Co. 85 S. C. 291, 67 S. E. 306; and note in 29 L.R.A.(N.S.) 272 on page 279.

An exception seems to be made as to public-service corporations owing a public duty for wanton violation thereof. Recoveries for exemplary damages only have been there upheld. Webb v. Atlantic Coast Line R. Co. 9 L.R.A.(N.S.) 1218, and note, 76 S. C. 193, 56 S. E. 954, 11 Ann. Cas. 1134, and conclusion of notes in 10 L.R.A.(N.S.) 403; and 17 L.R.A.(N.S.) 1226–1231. This question is not here involved, however, and mention is made of possible exceptions thereto that it may not be understood as the invariable holding in all cases. Hence, any error in defining the circumstances under which exemplary damages might have been allowed, and not limiting the jury in the allowance of any compensatory damages, upon which the jury was properly instructed, must be harmless error.

Defendant has assigned generally as error the refusal of the court to give thirteen requested instructions. As counsel has not in his brief referred to each one in particular, we will treat them in the same manner, and not set them forth. We have examined them all carefully with reference to the instructions given, and considered them in connection with the scope of the testimony and the issues involved, and find no error, as the instructions given fully covered the matters embodied in the requests so far as the requests were pertinent and correctly stated the law. This covers so much of the sixty specifications of error as settled as is assigned and attempted to be discussed in the brief. And many we have covered in this opinion might have been passed by as abandoned, as not argued in the brief of appellant. We are satisfied no error was committed on trial warranting a reversal of this case, and it is therefore affirmed.