JULIA GALIGER, Plaintiff and Appellant, v. L. W. HAN-
SEN and DELPHINE MAY ALLHANDS, as Executrix of
the Estate of G. Dewey Allhands, Deceased, Defendants
and Respondents.

No. 9572.
Submitted September 17, 1957. Decided December 30, 1957.
319 Pac. (2d) 1051.

Lyman H. Bennett, Virginia City, Lyman H. ·Bennett, Jr., Bozeman, for appellant.

Lyman H. Bennett, Jr., Bozeman, argued orally for appellant.

Frank E. Blair, Virginia City, Ralph J. Anderson and Stanley P. Sorenson, Helena, for respondents.

Ralph J. Anderson, Helena, argued orally for respondents.

MR. JUSTICE ANGSTMAN:

Plaintiff has appealed from a judgment entered on a verdict in favor of the defendants after her motion for a new trial was denied.

The complaint seeks actual and exemplary damages. It alleges that defendants failed to keep clean and free from grass and weeds their irrigation ditch which crosses plaintiff's land, and as a consequence the flow of water was retarded and water

was caused to seep onto plaintiff's land. It alleges that defendants had placed large and excessive quantities of water in their ditch in violation of the judgment in former cause numbered 3851; that the conduct of the defendants has been willful, wrongful, malicious and oppressive, and as a result plaintiff has been damaged by flooding, crops have been injured, some of her land has become waterlogged and the market value of plaintiff's holdings has been materially reduced.

Defendants in separate answers, admit plaintiff's ownership of the land through which the ditch in question extends and admit the entry of the former judgment, and deny generally the other allegations of the complaint.

The cause was tried to a jury which returned a verdict in favor of defendants.

Plaintiff assigns a number of specifications of error which may be grouped under the following headings: (1) the refusal of plaintiff's offered instructions, (2) giving of defendants' offered instructions over objection, and (3) the court's manner of dealing with the request of the jury for further information.

In order to consider the contentions of the plaintiff with regard to the instructions given and refused it is necessary to refer to the judgment made and entered in cause numbered 3851.

That action was commenced on December 22, 1949, by the defendants in the instant case as plaintiffs, against, the plaintiff in the instant case, her husband, who is now deceased, and one Kathryn Pankey, who is the owner of lands in the vicinity of those of the plaintiff and defendants herein, and who shares the ditch right across the lands of the plaintiff with the defendants herein. The trial in that case was before the court without a jury. From the judgment entered therein no appeal was taken.

The judgment was offered and received in evidence in this cause and, in substance, provided among other things the following:

That the McFadden-Johnson-Nason Ditch (which is the one in controversy here) is the property of G. Dewey Allhands, L. W. Hansen and Kathryn Pankey; that Kathryn Pankey is the owner of an individed one-half interest in the ditch from its point of diversion from Alder Gulch Creek to the point where it enters her lands and is the sole owner of the ditch from that point throughout the remainder of the course of the ditch until the plaintiff, L. W. Hansen, acquired from her the right to conduct not to exceed one hundred miners' inches of water therein.

The judgment also provided that Allhands, Hansen and Pankey have the right to maintain the ditch across the lands of Julia Galiger of sufficient capacity to conduct 254 miners' inches, and that the quantity of water that each of them may lawfully convey in the ditch is as follows:

G. Dewey Allhands—not to exceed 127 miners' inches, less any quantity of water, not exceeding 100 miners' inches, being conveyed through the ditch by L. W. Hansen.

L. W. Hansen—not to exceed 100 miners' inches.

Kathryn Pankey—127 miners' inches.

The decree further provided that Allhands, Hansen and Pankey have as a secondary easement in connection with the McFadden-Johnson-Nason Ditch a reasonable right to enter along the banks thereof for the purpose of maintaining the ditch at a capacity not exceeding 254 miners' inches. It permanently enjoined them from making any other or further use of the lands of Julia Galiger, and each of them was enjoined from making any greater or different use of the ditch than the carrying of the quantities of water provided for in the decree as to each of the parties.

Thus the defendants in this cause, together with Kathryn Pankey, have the right to maintain the ditch across the lands of the plaintiff here, of sufficient capacity to conduct 254 miners' inches of water.

The court instructed the jury in substance that defendants and Kathryn Pankey were co-tenants in the right to the ditch

in question and that each had the right as against plaintiff to conduct 254 inches of water through the ditch providing that they used ordinary care in maintaining the ditch to the capacity of 254 inches; that plaintiff had no cause to complain that excessive quantities of water were placed in the ditch unless the quantity exceeded 254 inches.

Plaintiff offered instructions to the effect that defendants ▆ were under the duty not to make any greater use of the ditch than permitted under the decree in cause numbered 3851, not to violate the injunctive portion of that decree, and not to increase the use of the easement or the size of the ditch. Those offered instructions were refused and properly so. They were but abstract statements offered, which this court has frequently held should not be given, Keller v. Flanagan, 66 Mont. 144, 213 Pac. 222; Lindeberg v. Howe, 67 Mont. 195, 215 Pac. 230; Newer v. First National Bank, 74 Mont. 549, 241 Pac. 613; Loncar v. National Union Fire Ins. Co., 84 Mont. 141, 274 Pac. 844, and also they are too general and incomplete to be of any assistance to the jury in determining the meaning of the judgment in cause numbered 3851.

But if technically they or any of them were unobjectionable plaintiff has been in no wise injured or prejudiced if the instructions given by the court were correct, because as above noted the court did advise the jury as to its interpretation of that judgment and the extent to which defendants were limited by it in using the ditch.

As above noted, the trial court adopted the theory that the ▆ defendants and Kathryn Pankey are tenants in common' in the ditch rights and that each of the co-tenants is entitled to the exclusive possession of the entire property as against everyone, except his co-tenants, that only a co-tenant or other injured appropriator of water (and there are none here), could object to the use made by another co-tenant and a stranger could not. That view is sustained by the authorities. Osnes Livestock Co. v. Warren, 103 Mont. 284, 62 Pac. (2d) 206; Le-

Vasseur v. Roullman, 93 Mont. 552, 20 Pac. (2d) 250; Rodda v. Best, 68 Mont. 205, 217 Pac. 669.

The cases of Hansen v. Galiger, 123 Mont. 101, 208 Pac. (2d) 1049, and Clausen v. Armington, 123 Mont. 1, 212 Pac. (2d) 440, relied on by plaintiff do not militate against this view. Those cases merely hold that after a ditch right has been acquired it cannot be enlarged or its location changed, nor can it be used in diverting an increased volume of water without the consent of the owner of the land through which it extends. None of those things are sought to be done here. The amount of water which these defendants and Kathryn Pankey have a right to convey through the ditch in question is 254 inches. That is the capacity of the ditch that defendants and Kathryn Pankey are entitled to maintain.

The situation is no different than it would be if one co-tenant acquired or owned all the rights of the three co-tenants. Plaintiff could not complain of the amount of water placed in the ditch so long as it did not exceed 254 inches. In fact the Clausen case recognized the right of one owning a ditch right to use it to the full extent of his water right even though acquired at different times from different people. The court correctly instructed the jury as to the rights of the parties under the judgment in case numbered 3851.

Plaintiff next complained of defendants' instructions 23 and 24 which were given over her objection. These instructions informed the jury that the defendants' right as against plaintiff to conduct water through the ditch in question is not limited by the water rights owned by the defendants.

It should be noted that Kathryn Pankey is not a party to this action. So far as plaintiff is concerned these defendants or either one of them could conduct the waters belonging to Kathryn Pankey through this ditch and she is the only one who could complain.

Water rights and ditch rights are separate and distinct property rights and one may own a ditch right without

a water right. Connolly v. Harrel, 102 Mont. 295, 57 Pac. (2d) 781, and cases therein cited.

As pointed out above, the court by instructions did advise ▇ the jury that defendants could not convey more than 254 inches of water in the ditch and that was all the instructions on that subject that plaintiff was entitled to.

Plaintiff contends, that the court erred in not giving her offered instruction 16 reading: "You are instructed that if you find from a preponderance of the evidence in this case that the defendants' conduct was unjustifiable and caused injury to the plaintiff, malice in law would be implied therefrom." She also assigns error in the giving of defendants' proposed instruction 22 which also had to do with the question of malice.

As will be noted both of these offered instructions relate to the ▇▇ subject of malice and are important on the issue of exemplary damages only. Malice did not become a question of importance in the case unless and until the jury first found in favor of plaintiff on actual damages.

In this state there can be no recovery of exemplary or punitive damages unless plaintiff is entitled to actual damages. Gilham v. Devereaux, 67 Mont. 75, 214 Pac. 606, 33 A.L.R. 381. Here the jury expressly found against plaintiff on the issue of actual damages. There is thus no predicate in the case for exemplary damages, and any error in the giving or refusal to give instructions affecting that issue only would not have been prejudicial or harmful to plaintiff. Stockwell v. Brinton, 26 N.D. 1, 142 N.W. 242.

Other contentions regarding the instructions given and refused have been considered, but we find no reason for interfering with the verdict of the jury on this account.

The only other question which we deem of importance is the contention made by plaintiff that she should have a new trial because of what took place regarding the request of the foreman of the jury that testimony given in the trial be read to the jury.

By affidavit, the foreman and one of the other jurors stated there was a disagreement as to a part of the testimony and that they believed that if the jurors who did not agree with them could be certain that the evidence was as they believed it to be, they would agree with them; that the jurors agreed to a suggestion that they request the privilege of hearing such testimony read; that the bailiff was called and asked to convey the request for the testimony to the judge; that the bailiff left and returned in a short time and informed the jury it would take several days to comply with the request; that some of the jurors who had not agreed with affiants indicated there did not appear to be any reason to discuss the matter further; that a final ballot was thereupon taken indicating that the verdict would be as it was finally returned; that affiants believe if the request of the jury had been complied with, the jury would not have arrived at the verdict which was returned.

In opposition to the motion eight of the jurors who voted for the verdict which was returned by affidavit stated that at no time were they uncertain as to the evidence in the case and that a reading of the evidence would not in any way have altered the verdict that was arrived at by the jury; that the foreman and one other juror were the principal promoters of the idea of having the evidence read to the jury; that if the evidence had been read the only effect that could have resulted would have been a greater majority for defendants. There is some conflict in the affidavits as to whether the request of the jury was for a part or all of the testimony.

The official court reporter made affidavit to the effect that the bailiff in charge of the jury came to her while the jury was deliberating on the case and told her that the jury wanted to have read all of the testimony in the case and affiant stated it would take three or four days to do that; affiant then suggested that the matter be referred to the judge which the bailiff accordingly did; that the judge said the attorneys would have to be notified and that he would look up the statutes meanwhile; that the judge did not instruct the bailiff to tell

the jury it would take several days to transcribe the testimony. The bailiff made affidavit substantially the same as the official court reporter except that he asserted he was told by the judge to report to the jury that it would take three or four days to obtain the testimony and this he reported to the jury; and he further stated that at no time was the jury brought into open court in connection with this matter and the attorneys were not notified thereof.

In Pilgeram v. Haas, 118 Mont. 431, 445, 167 Pac. (2d) 339, it was held that after the jury has retired for deliberation, if there be a disagreement between the jurors as to any part of the testimony which has been given at the trial, they may require the bailiff to conduct the jury into court, and the presiding judge should ascertain what the particular testimony is that they are not in accord on. In this instance the affidavits present conflicting statements as to just what was done.

All or a part of the testimony of any witness should not be ██ read merely because one or more of the jurors desire to have their memories refreshed. Hershey v. Tully, 8 Colo. App. 110, 44 Pac. 854; Fairbanks, Morse & Co., v. Weeber, 15 Colo. App. 268, 62 Pac. 368; Jenkins v. Stephens, 64 Utah 307, 231 Pac. 112. Here we are advised by affidavit of eight of the jurors, who were enough to render a verdict, that they were not in disagreement as to what the evidence showed. The only ones who desired some or all of the testimony read were those who finally voted against the verdict. They desired the testimony read not because they had doubt as to what it contained but with the hope that they thereby could influence the other jurors to change their minds. The other jurors, being two-thirds of them, state, definitely that their verdict would not have been different had the testimony or any part of it been read to them. The irregularity here complained of, if it actually existed, does not appear to have affected the verdict. It should not cause a reversal when it is clear that it did not affect any substantial right of plaintiff. R.C.M. 1947, section 93-8023.

Judgment is affirmed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES CASTLES and ADAIR, concur.