No. 17,171.

CALVIN ET AL. *v.* FITZSIMMONS.
(270 P. [2d] 748)

Decided May 17, 1954.   Rehearing denied June 7, 1954.

Messrs. THOMAS & THOMAS, for plaintiffs in error.

Mr. DEAN JOHNSON, for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

THIS action grows out of a dispute as to the boundary line between the northwest quarter and the southwest quarter of a section of land in Kit Carson county, Colorado, and is brought under the provisions of Rule 105, R.C.P. Colo. On trial to a jury, a verdict was returned in favor of plaintiff, and judgment was thereafter entered on the verdict. Defendants, being dissatisfied with the judgment, have brought the cause to our Court by writ of error seeking a reversal.

It appears from the record that plaintiff Thomas Fitzsimmons acquired the ownership of the southwest quarter of section 2, which is described in his amended complaint as a governmental subdivision, and further therein described by metes and bounds. In 1941, subsequent to acquiring title to his land, plaintiff constructed a fence along the north boundary thereof, its location having been determined by measurements from what he assumed to be the north boundary line of the township, and guided, more or less, by similar fences in sections 1 and 3 in the township. He entered into possession of the lands thus fenced by him, and enjoyed the use thereof until defendants Calvin purchased the northwest quarter of said section 2 in November, 1948, when it became apparent to them that if the northerly boundary line of the southwest quarter of said section was as indicated by the fence, then the northwest quarter of said section contained only approximately 100 acres. Without in anywise communicating with Fitzsimmons, and in 1949, defendants Calvin "dismantled" the existing fence and caused a new fence to be constructed a distance of about

sixty rods south, which included approximately sixty acres theretofore fenced by plaintiff and claimed by him to be a part of the southwest quarter of said section. Defendants caused the sixty acres to be plowed, and, at the time of the institution of this suit, claimed to be the owners thereof.

The trial court entered an order appointing a surveyor to determine and establish the division line between the southwest quarter and the northwest quarter of section 2 and report to the court. The court-appointed surveyor proceeded on a correctional line which was the south boundary of the township, and measured the east and west boundary line of the tier of sections in the township of which section 2 was a part. As a result of his survey, it was established that the east and west boundary lines of sections 35, 26, 23, 14, 11 and 2 were approximately 31,350 feet and that the other sections in the tier in which section 2 was located had enclosed within their fences more than they were entitled to under the governmental survey, leaving only 4108 feet in length on the east and west boundary lines of said section 2. Consequently, if the acreage claimed by those owners in the sections in the tier directly south of section 2, who are not parties here, is undisturbed, there are only approximately 260 acres of land in the west half of section 2, although the governmental survey shows that the southwest quarter contains 160 acres and the northwest quarter contains 159.5 acres.

There is in the record before us a photostatic copy of the map of township 10, south range 44 west, of the sixth principal meridian, in which section 2 is located, disclosing that the government survey of this township was made in 1882 and indicating that monuments were erected in accordance with governmental instructions, but these monuments were either lost or destroyed, and none thereof could be used by any of the parties hereto or the court-appointed surveyor in ascertaining the di-

viding line between the northwest quarter and the southwest quarter of section 2 in said township.

In our consideration of this case we have concluded that the judgment entered by the trial court must be reversed, and this for a reason not strongly relied upon by the attorneys for either party hereto. The record discloses that a jury was empaneled to try the issues in the cause, and that at the close of all the evidence, the court instructed it, inter alia, as follows:

"You are instructed that under the evidence and the testimony in this case, you are limited to a determination of the question of the location of the true boundary between the lands of the parties as established by the original government survey, that is to say, that you should determine from the evidence and testimony in the case whether the true boundary between the lands of the parties herein is on the line established by the fence built by the plaintiff in the year 1940 or is on the line established by the Prouty Survey [court-appointed surveyor]." And, further:

"You are instructed to ascertain and find from the evidence the true boundary line between the northwest quarter and the southwest quarter of Section 2, Township 10 South, Range 44 West of the 6th Principal Meridian, that is, whether the fence line as built and established by the plaintiff in 1940, extending from the west line to the east line of the West half of Section 2, as shown by the evidence, or whether the survey line as established by the Prouty Survey between said east and west lines of said West half of Section 2 is the true line. And, if you find that the said plaintiff's fence line is the true line, you will find for the plaintiff and assess his damages for the items testified to."

No proper objection appears in the record to these instructions.

The jury returned the following verdict: "We, the Jury, duly empaneled and sworn, do upon our oaths find the issues herein joined in favor of the plaintiff and as-

sess his damages against the defendants in the sum of $808.00. Plus court costs. J. Carl Harrison, Foreman."

Thereafter the court entered its judgment and decree in which the following appears:

"1. That the verdict of the jury is fully sustained by the evidence and ought to be ratified, approved and accepted by the Court and that judgment ought to be entered herein in accordance with said verdict.

"2. That the allegations of the plaintiff's Amended Complaint are true and fully sustained by the evidence; that the plaintiff is the owner in fee simple and entitled to possession of the land and real estate described in said Amended Complaint and that the true boundary line between the land of the plaintiff and the land of the defendants is *that line along which a fence was constructed by the plaintiff between said lands in the year 1940,* as shown by the evidence and testimony herein.

"3. That the defendants entered into and trespassed upon the land of the plaintiff, removing the plaintiff's said fence along the northerly boundary thereof and erecting thereon a fence which enclosed and incorporates a tract of approximately sixty acres thereof into the land of the defendants lying to the north thereof, * *; that the plaintiff is entitled to recover possession of the said tract of land and is entitled to an injunction enjoining and restraining the defendants, * * * from trespassing, entering upon or in any manner in interfering with the plaintiff's possession of the said tract of land or claiming any interest therein adverse to the plaintiff, and ordering the defendants to remove the fence they have constructed thereon; and that the plaintiff is entitled to the amount of damages awarded by the verdict of the jury herein.

"Now, therefore, it is ordered, adjudged and decreed by this Court as follows, to-wit:

"1. That the verdict of the jury herein be and it is hereby ratified, approved and accepted by the Court and

that judgment be and is hereby entered herein *in accordance with said verdict.*

"2. That the plaintiff have judgment against the defendant[s], and each of them, for damages in the sum of Eight Hundred Eight and no/100 Dollars ($808.00) together with the costs of this action.

"3. That the plaintiff have judgment against the defendants, and each of them, * * * for recovery of the *possession of that tract of approximately sixty acres of his land now enclosed within the fence of the defendants* and that the defendants be and they are hereby ordered to remove the fence they have constructed on the plaintiff's land and that the plaintiff be restored to the true north boundary line of his said land, the same being the line along which he constructed his fence in the year 1940. * * *" (Italics ours)

To this judgment and decree defendants filed their motion for additional findings under the provisions of Rule 52, R.C.P. Colo., requesting that the court in its judgment and decree specifically and definitely locate the corners of the quarter sections here in question, asking generally the exact measurements to be made from these specific and definitely located corners, and alleging that the findings and judgment of the court were "indefinite, uncertain and ambiguous and fails to actually determine the boundary lines between the lands of the parties hereto in any manner so that the same can be definitely fixed and determined and fails to show the Government markers or locations or points used in the measurements necessary to locate the corners and boundaries between the lands of the parties hereto." This motion was denied, and we hold that in so doing the court erred.

■■ It is a general rule of law, adopted in all jurisdictions so far as we have found, that a judgment and decree involving the right to possession of real property must definitely and sufficiently describe it in order that an officer charged with the duty of executing a writ of

possession may go upon the premises, and, without exercising any judicial functions whatever, ascertain with certainty the boundary lines fixed by the judgment. The judgment and decree must be so definite and specific in defining the proper location of the boundary lines that all the parties affected thereby may comply with the judgment in every respect. *Norrie v. Fleming*, 62 Idaho 381, 112 P. (2d) 482; *People v. Rio Nido Co.*, 29 Cal. App. (2d) 486, 85 P. (2d) 461; *Scilly v. Bramer*, 170 Pa. Super. 276, 85 A. (2d) 592; *Tillman v. Hutcherson*, 348 Mo. 473, 154 S.W. (2d) 104; *Kosanke v. Kopp* (Idaho), 261 P. (2d) 815; *Mason v. Nour*, 190 Ga. 62, 8 S.E. (2d) 14; *Broderick v. Tyer*, 239 Mo. App. 118, 187 S.W. (2d) 476; Warvelle on Ejectment, p. 540, sec. 483, et seq.; 1 Freeman on Judgments (5th ed.), p. 165, sec. 96, et seq.; 28 C.J.S., p. 1002, sec. 109 (b), et seq.

■ The boundary line between the northwest and southwest quarters of section 2, as fixed in the judgment, is a fence which was completely destroyed in 1949, and its former location can only be ascertained from those who were familiar with its location, and as to this there may be a wide variance. Assuming that there was evidence before the court which would enable it to definitely and specifically describe the boundaries between these two quarter sections, nevertheless it was not incorporated in the judgment and decree, and it was to supply this deficiency that defendants sought in their motion for additional findings. The judgment herein is too indefinite, uncertain, vague and ambiguous to enable the parties hereto or others to definitely locate the boundary lines between the two quarter sections, and the recordation of the judgment and decree would be ineffectual as notice.

The judgment, accordingly, is reversed and the cause remanded for a retrial unless the parties hereto, with the court's approval, stipulate a boundary line between the two quarter sections, and a proper judgment describing such boundary line is prepared and entered herein.