No. 21242.

COURTNEY H. THOMSON AND ZOLLIE C. THOMSON v. CLARKS INCORPORATED, A COLORADO CORPORATION.
(427 P.2d 314)

Decided May 8, 1967.

KETTELKAMP, MCGRATH & VENTO, for plaintiffs in error.

THULEMEYER & STEWART, RICHARD W. BANGERT, LOUIS T. KOVACS, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

CLARKS INCORPORATED, defendant in error, was plaintiff in the trial court and will be referred to here as

plaintiff or Clarks. It filed an action to quiet title to a parcel of land which it described as:

"All that part of Lot 1 in Section 8 in Township 22 South of Range 59 West of the 6th P.M. lying south of the well defined former location of the channel of the Arkansas River being the place where such channel was located before it was changed by artificial means to about its present location."

The Thomsons, plaintiffs in error and defendants in the trial court, answered entering a general denial, alleging adverse possession of the parcel claimed by Clarks, and requesting that title to the following described property be quieted in them:

"Lot 1 in Section 8 North of the Arkansas River in Township 22 South of Range 59 W., of the 6th P.M. according to the Official Plat of the Survey of the said Lands, returned to (sic) the General Land Office by the Surveyor General."

On trial to the court, title was quieted in Clarks from which ruling the Thomsons bring writ of error alleging as grounds for reversal the following:

(1) The court erred in failing to describe the boundary lines of the property with definiteness and specificity;

(2) Clarks failed to prove ownership for the property; and,

(3) The court erred in failing to establish title in the Thomsons by reason of adverse possession for eighteen years pursuant to C.R.S. '53, 118-7-1 and for seven years pursuant to C.R.S. '53, 118-7-8.

Plaintiff assigns as cross-error the court's failure to strike the reporter's transcript as it was not filed until 127 days after the date of the judgment contrary to R.C.P. Colo. 112(f) which requires filing within 60 days from the date of the judgment.

From the record it appears that one Anderson B. Wyatt in 1874 received a patent from the United States granting him the following land:

"Lot 1 and 2 Sec. 8 North of Arkansas River, in Twp.

22 S. of Rg. 59 W. (with other land), Colorado Territory, containing 164.65 Acres according to the Official Plat of the Survey of the said Lands, returned to the General Land Office by the Surveyor General."

Lot 1 was ultimately conveyed to J. S. Moore who retained the entire lot until 1915 when he conveyed to one William Damerell the following described parcel:

"Lot 1 in Sec. 8, Twp. 22 S. Rg. 59 W. of the 6th P.M., lying South of the Arkansas River, containing 30 acres, more or less. In *Otero County*, Colorado." (Emphasis added.)

And in 1919, J. S. Moore conveyed to W. Etherington:

"* * * the following described lots or parcels of land situate in *Crowley County*, Colorado, to-wit:

"That part of Lot 1 in Section 8 Township 22 South of Range 59 West of the 6th. P.M., containing 60 acres, more or less, lying north of the Arkansas River." (Emphasis added.)

In 1911 a statute was passed, the present C.R.S. 1963, 34-1-15, which places the boundary between Otero and Crowley Counties at the center line and meanderings of the Arkansas River.

Clarks Incorporated received title to that portion of Lot 1 lying south of the Arkansas River through G. E. Clark, to whom William Damerell had conveyed the property. The Thomsons trace their title to that part of Lot 1 lying north of the Arkansas River back to W. Etherington.

In 1935-36 the course of the river was changed in this area in order to bypass an oxbow loop which was threatening to wash out the north end of a bridge on Colorado Highway 167 north of Fowler, Colorado. A straight channel was cut, and the Arkansas River, which had formerly flowed on the north edge of the land originally deeded to William Damerell "containing 30 acres, more or less," then flowed to the south of the land. G. E. Clark had been in possession of this piece of land until after the course of the river was changed.

He testified that he did not use the property after the river change but did pay taxes on it the entire time in *Otero* County. He conveyed the property to Clarks Incorporated in 1947.

The Thomsons took possession of the acreage north of the Arkansas River in Lot 1 in 1948. There is some evidence that they had some hogs and later a few head of cattle pastured in the disputed area. In 1957 they placed a fence along the present course of the Arkansas River and across the contested area in order to keep their cattle from reaching the river. The Thomsons paid taxes on all of their property in *Crowley* County.

The trial court made extensive findings of fact and conclusions of law, the pertinent parts of which are as follows:

*     *     *

"(3)  The property which is the subject matter of this litigation is Lot 1 in Section 8, Township 22 South, Range 59 West of the 6th P.M., which in 1874 contained 35.60 acres and was patented in accordance with the Hill survey in 1874 by one, Anderson B. Wyatt, with other land including Lot 1 Section 16, Township 22 South Range 59 West of the 6th P.M., involved in Smith v. Fowler, mentioned above [*Smith v. Town of Fowler*, 138 Colo. 359, 333 P.2d 1034 (1959)]

"(7)  The center line and meanderings of the Arkansas River being the boundary line between Otero County and Crowley County, and near the north boundary of the land involved in this action, is the channel of the Arkansas River as it was before it was changed by artificial means in 1935-36. The boundary between the two counties, established by legislative act, C.R.S. 1953, 34-1-15, could not be changed by an artificial changing of the course of the river.

"(13)  The court finds that at the time John S. Moore made his conveyance to William Damerell, set forth above, it was the intention of said John S. Moore to convey to William Damerell the approximately 30 acres

of Lot 1, in Section 8, Township 22 South of Range 59 West of the 6th P.M. that was at that time lying south of the then-channel of the Arkansas River * * * in *Otero* County, Colorado, and to W. Etherington, that part of Lot 1 in Section 8 Township 22, South of Range 59, West of the 6th P.M. north of the Arkansas River in *Crowley* County. * * *

"(4) The land claimed by the plaintiff herein, to large extent now is, and has been at all times, pertinent to a decision in this case, located in Otero County, Colorado. The plaintiff has established its unbroken chain of title that originated from one, Anderson B. Wyatt, who obtained title by United States patent in 1874.

"(5) * * * the court does not find that there is sufficient evidence to sustain any claim of complete exclusive adverse possession until 1957. * * *

"(8) There is insufficient evidence before the court at this time to determine the exact location of 'the well defined former location of the channel of the Arkansas River, being the place where such channel was located before it was changed by artificial means to about its present location.' A large part if not all of the Lot 1 involved in this action lies south of said former channel. * * * ." (Part in brackets added.)

Turning first to the Thomsons' second point of error, *i.e.*, that Clarks failed to prove ownership of the land in question, suffice it to say that there is sufficient evidence in the record to sustain the findings of the trial court. Though the evidence is in dispute as to whether the river did in fact flow to the north of this plot of land, findings of fact resolving disputed evidence will be upheld unless it is clear from the record that they are manifestly against the weight of the evidence. *Consolidated Oil and Gas v. Roberts*, 162 Colo. 149, 425 P.2d 282 (1967), *Vider v. Zavislan*, 146 Colo. 519, 362 P.2d 163 (1961); *Saunders v. Spina*, 140 Colo. 317, 344 P.2d 469 (1959).

We held in *Smith v. Town of Fowler*, 138 Colo.

512

359, 365, 333 P.2d 1034 (1959), that the reference in the original Wyatt patent to the lots in question being situated north of the river had no basis in fact; rather the boundary of the lot was the Ashley meander line and not the river itself. The conveyances from Moore to Etherington and Damerell in 1915 and 1919 do, however, use the river as a boundary line as does the statute creating the line between Crowley and Otero Counties. Although the doctrine of accretion and reliction applies in Colorado (see *Hall v. Brannan Sand and Gravel Co.*, 158 Colo. 201, 405 P.2d 749 (1965) and *Smith v. Town of Fowler, supra*), it was amply shown by the evidence in this case that when the river channel was altered in 1935-36 it was not a slow and gradual change but a sudden change caused by mechanical or artificial means so as to constitute an avulsion rather than an accretion. When such a sudden change occurs, there is no alteration in the boundary line. It remains at the location of the river immediately prior to the change. See III *American Law of Property* §§ 15.27 and 15.29; *Clark on Surveying and Boundaries* § 610. Thus the north boundary of the property here in question is the position of the river immediately preceding the change by artificial means taking place in 1935-36.

As to Thomsons' third point of error, asserting that they proved adverse possession, the trial court correctly found that there was insufficient evidence of the type of possession required to perfect a claim of adverse possession until 1957. While there was evidence that defendants had allowed their cattle to graze on the land in question prior to the time of erecting the fence in 1957, we have held that the practice of grazing cattle on unfenced land is not of itself sufficient to show the required possession. *Smith v. Town of Fowler, supra* at page 367. Since this action was filed in 1961, not enough time had elapsed to perfect an adverse possession claim under either the eighteen year statute (C.R.S. '53, 118-7-1) or the seven year statute (C.R.S. '53, 118-7-8).

■ The Thomsons' first point of error is, however, well taken. The property involved is not described in a legally satisfactory manner. In *Calvin v. Fitzsimmons*, 129 Colo. 420, 270 P.2d 748 (1954) we said:

"It is a general rule of law, adopted in all jurisdictions so far as we have found, that a judgment and decree involving the right to possession of real property must definitely and sufficiently describe it in order that an officer charged with the duty of executing a writ of possession may go upon the premises, and, without exercising any judicial functions whatever, ascertain with certainty the boundary lines fixed by the judgment. The judgment and decree must be so definite and specific in defining the proper location of the boundary lines that all the parties affected thereby may comply with the judgment in every respect. * * *."

Here one of the exhibits, an aerial photograph, shows the channel of the Arkansas River immediately preceding the 1935-36 change as well defined and easily ascertainable; however, another photograph in evidence of a more recent date shows the original oxbow is being obliterated by time. In view of the trial court's candid statement to the effect that the evidence was insufficient at the time of trial to determine the exact location of the former channel, we do not feel that the description as used by the court in its judgment is adequate to meet the test set forth in *Calvin v. Fitzsimmons, supra.*

The cause is, therefore, remanded with directions to the trial court to have determined with particularity (by a survey, if necessary) the location of the Arkansas River immediately preceeding the artificial change made in 1935-36 and to quiet title in Clarks Incorporated to that portion of Lot 1, Section 8, Township 22 South, Range 59 West of the 6th P.M. which lies south of the thread of this former channel. In view of the fact that only defendants' second and third points of error would be affected by a striking of the transcript, and we have found no merit to either of these contentions, it is un-

necessary to deal with Clarks' assignment of cross-error.

The judgment is affirmed in part and reversed in part and remanded with directions to make additional findings not inconsistent with this opinion.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE HODGES and MR. JUSTICE KELLEY concur.