486 P.2d 463 (1971)
H. T. C. CORPORATION, Plaintiff in Error,
v.
Ben OLDS, dba Olds and Redd Construction Company, and Millard C. Simpson, dba Simpson Sheet Metal, Defendants in Error.
No. 70-628. (Supreme Court No. 23714.)
Colorado Court of Appeals, Div. II.
April 13, 1971.
Rehearing Denied May 4, 1971.
Certiorari Denied July 6, 1971.
*464 Harden, Olson & Napheys, Ralph B. Harden, Fort Collins, for plaintiff in error.
Hill & Hill, Alden T. Hill, Fort Collins, for defendants in error.
Not Selected for Official Publication.
PIERCE, Judge.
This case was transferred from the Supreme Court pursuant to statute.
*465 This was an action on oral contract for fees, costs, and to enforce and foreclose mechanics' liens. The plaintiff Ben Olds, dba Olds and Redd Construction Company (Olds), was a general contractor; plaintiff Millard C. Simpson, dba Simpson Sheet Metal (Simpson), was a subcontractor. Defendant H. T. C. Corporation (H. T. C.) was a Colorado corporation formed by Messrs. Harris, Thomsic, and Carlson, who were the sole owners and officers of H. T. C.
H. T. C. Corporation was formed to build a recreational facility, called the Matterhorn, for college students in Fort Collins, Colorado. It was to provide restaurant, drinking, and dancing accommodations. After initial meetings between Olds and H. T. C. in late 1965, plans for construction of the Matterhorn began to take form. Without any drawings or specifications, Olds made a conjecture as to the probable cost, based mainly upon a similar facility recently completed by Olds for Mr. Thomsic. The cost estimate was approximately $100,000.
About the same time, a designer with whom both plaintiff Olds and Mr. Thomsic had previous experience, was hired by defendant to prepare plans.
Defendant arranged financing with the First National Bank of Fort Collins, which required a written contract between plaintiff and defendant before disbursement of funds.
On or about March 20, 1966, plaintiff Olds and defendant signed a written agreement prepared by defendant's attorney, although at the time, plaintiff stated his objection to the contract's guaranty provision. A few of the designer's preliminary plans were available at that time but were admittedly very incomplete and without specifications. Plaintiff, defendant, and the bank had studied these plans before the contract was signed and before the bank agreed to loan $100,000 for construction. The bank made its own appraisal of the site and plans.
The written agreement recites that:
"Second party [Olds] construct [sic] improvements on the above-described property owned by first party [H. T. C.] in accordance with the attached copy of plans and specifications, which plans and specifications have been agreed to by and between the parties hereto * * *."
No plans or specifications were ever attached to this document, and the only plans existing at the time were the designer's admittedly inadequate drawings. Not until sometime after construction was started were there any plans drawn for plumbing, heating, air conditioning, electrical, sewage, and numerous other details normally needed for construction. No specifications were ever prepared except the designer's notes that appeared at different points on the drawings.
The written agreement also provided that after work had started no changes in plans or specifications would be made unless they were set forth in writing and signed by defendant officers, the bank, and the plaintiff. Evidence is undisputed that, although several changes were made, none was ever specified or described in a written and signed order.
The written agreement further provided that plaintiff:
"will construct said premises on a cost-plus basis with the guarantee that the cost for constructing the improvements in accordance with the plans and specifications will not exceed the sum of One Hundred Twenty Thousand Dollars ($120,000). This cost of $120,000 does not include site improvement and is exclusive of chattels and also does not include the cost of fill which is necessary before construction can be commenced."
Plaintiff's fee, by the written agreement, was to be $8,400.
After commencement of construction, extensive changes were made by the parties. Plaintiff attempted to get bids from various subcontractors, most of whom refused to bid due to the inadequacy of the plans and would give only estimates. One subcontractor, *466 who ventured to make a bid in the middle of the job, told plaintiff and defendant that, because so many changes were being made during the course of his work, he would only continue on a cost-plus basis.
The case went to trial in October of 1967 on a variety of issues. Plaintiff Simpson was granted an in rem judgment in the amount of $4,865.60; Olds was granted an in personam judgment in the amount of $12,516.60, and foreclosure of the liens was ordered.
Numerous errors have been alleged by both parties. A more specific delineation of the facts involved in this case will be presented as separate assignments of error are discussed.

I.
The trial court, in its findings of fact and conclusions of law, found:
"Although Plaintiff and Defendant may have had a contract with the guarantee of $120,000, it was abandoned by the conduct of the parties, particularly by the Defendant in requiring so many changes without, in most cases, regard to cost. No doubt all parties hoped to do the job for $120,000 or less, but once the bank was satisfied by the execution of the contract, there seemed to be no further reference or concern for its terms or conditions.
* * * * * *
"The changes made are too numerous to list, but the evidence disclosed over 40 major changes. * * * Some of the changes were made to save costs, but most of them were made, obviously, without too much regard for cost. Evidence shows that one of the Defendant Officers was on the job site every day and sometimes two or three times a day. He ordered some changes on the job without knowledge or approval of the Plaintiff. * * * The Defendant Officers approved of all changes made. The attitude of Defendant Officers was indicated to some extent at one point during the construction when Plaintiff and Defendant Officers were all present discussing a number of major changes that were under consideration. One of the Defendant Officers expressed his concern that those changes would cost a lot and he wasn't in favor of them. The other two officers of the Defendant corporation said that he, the dissenter, was `just out voted,' and the changes were to be made."
The court also found there was considerable conflict in the evidence as to when anyone realized or even suspected that the cost would exceed $120,000, stating:
"The Defendant admittedly didn't look over the monthly bills and the Plaintiff apparently was not doing a very good job of cost accounting. It was not until the end of August, 1966, when the August bills came in, that everyone clearly knew that the cost had exceeded $120,000."
H. T. C. assigns as error the trial court's finding that under the facts of this case the construction contract between H. T. C. and Olds had been abandoned. It is the settled and general rule that a contract may be abandoned by mutual consent and that such consent may be implied from the acts and conduct of the parties. City of Del Rio v. Ulen Contracting Corp., 5 Cir., 94 F.2d 701; Treadwell v. Nickel, 194 Cal. 243, 228 P. 25; see 5A A. Corbin, Contracts § 1236. A contract will be treated as abandoned when the acts of one party, inconsistent with its existence, are acquiesced in by another. Baker v. School District #48, 120 Neb. 513, 233 N.W. 897; Reichert v. Mulder, 121 Neb. 11, 235 N.W. 680; Tulsa Opera House Co. v. Mitchell, 165 Okl. 61, 24 P.2d 997. Where acts and conduct are relied upon to constitute abandonment, however, they must be positive, unequivocal, and inconsistent with intent to be further bound by the contract. Sauder v. Dittmar, 10 Cir., 118 F.2d 524, 530. See Hoff v. Girdler Corp., 104 Colo. 56, 88 P.2d 100.
In Baerveldt & Honig Const. Co. v. Dye Candy Co., 357 Mo. 1072, 212 S.W.2d 65, *467 the plaintiff contractor was engaged by defendant to rebuild a building that had been severely damaged by fire. A contract rather indefinite in its terms was signed wherein plaintiff agreed to construct a two-story building for a total approximate price of over $16,000, including 10% for overhead and profit. After construction began, numerous changes were made in the building. Some were in writing and agreed to; others were not reduced to writing. The referee concluded that the contract had been abandoned. On appeal, the Missouri Supreme Court stated:
"It seems to us that in view of the numerous changes, some material and substantial and others trivial, the referee was justified in finding that the original contract was so modified and changed that it amounted to an abandonment thereof and that the only practical way to settle the controversy was to adjust the matter on a quantum meruit basis. * * * A building was erected which was materially different from the one vaguely provided for in the original contract. It was erected as ordered by the defendant and according to suggestions made while the work was in progress. We hold that the original contract was abandoned by the conduct of the parties. We mention a few of the changes: The raising of both floors, the enlarging of the office space, the enlarging of the opening for the elevator, changing the construction of the toilet and substituting or changing materials. All of these changes were authorized and ordered by the defendant. It certainly would be unjust for defendant to have advantage of all these changes and plaintiff be restricted to his original contract price * * *."
See Schwartz v. Shelby Const. Co., 338 S.W.2d 781 (Mo.); George F. Robertson Plastering Co. v. Magidson, 271 S.W.2d 538 (Mo.); 17A C.J.S. Contracts § 412; 13 Am.Jur.2d, Building and Construction Contracts § 97.
We hold that in this case there was substantial evidence upon which the trial court could base its finding that there had been an abandonment of the original contract. On review, every inference fairly deducible from the evidence is drawn in favor of the judgment. Gaulin v. Templin, 162 Colo. 55, 424 P.2d 377. Findings of fact resolving disputed evidence will be upheld unless it is clear from the record that they are manifestly against the weight of the evidence. Thomson v. Clarks, Inc., 162 Colo. 506, 427 P.2d 314.
We further hold that the trial court's determination of the costs, and deductions therefrom, reasonably due plaintiffs, were adequately supported by the evidence. They will not be disturbed on review. Thomson v. Clarks, Inc., supra.
H. T. C.'s further allegations of error in regard to the trial court's determination and computation of allowable costs are without merit.

II.
During the course of construction, plaintiffs obtained a materials estimate from the Steele Lumber Company. Approximately two months before completion of the structure, plaintiff discovered that a mistake of several thousand dollars had been made in the materials estimate obtained. The error was the result of Steele Lumber Company's estimator omitting a whole section of the building, including a portion of the roof, in his estimate. The trial court rested the burden of error upon plaintiff and credited defendant H. T. C. with the sum of $8,000.
Plaintiff alleges further error, claiming the evidence was insufficient to establish negligence upon which the $8,000 charge and credit could be predicated. On the contrary, the court was supported by the record in its finding that:
"The Plaintiff had a responsibility to the Defendant to hold costs down and being an experienced contractor should have known this estimate was considerably in *468 error. It is true that this additional material went into the building, but it added an unexpected cost of $8,000 which Defendant might have been able to compensate for by the reduction of some other costs."
Both defendants and plaintiffs allege that the court incorrectly found that the unexpected cost which resulted from the error was in the amount of $8,000. Although evidence was conflicting and complex, we are of the opinion that the court based its evaluation of the mistake at $8,000 upon substantial and competent testimony and exhibits. There was considerable evidence presented upon all factors necessary to make this evaluation and we will not overturn the ruling of the trial court where it is supported by such evidence. Central Mortgage & Investment Co. v. Downey, 166 Colo. 97, 442 P.2d 427.

III.
Plaintiffs contend that the trial court's judgment should be amended to award Simpson a personal judgment. Although Olds and Redd Construction Company was given a personal judgment against H. T. C. Corporation, the trial court further ordered:
"That plaintiff Maynard C. Simpson by virtue of his mechanic's lien has an in rem judgment against defendant H. T. C. Corporation in the amount of $4,865.60, to be satisfied from a sale of the subject property."
Plaintiffs argue that, since no construction contract was filed, a personal judgment was required under C.R.S.1963, 86-3-1(3) which states:
"* * * [T]he labor done and materials furnished by all persons before such contract or memorandum is filed, shall be deemed to have been done and furnished at the personal instance of the owner, and they shall have a lien for the value thereof."
We do not construe C.R.S.1963, 86-3-1(3) to expressly authorize an in personam judgment in this case. The purpose of the requirement that a contract be filed was set out in Great Western Sugar Co. v. F. H. Gilcrest Lumber Co., 25 Colo.App. 1, 136 P. 553, which held that when a contract is not filed or is not required to be filed under the statute, a subcontractor may get a direct lien against the owner without notice.
Although the owner may limit his liability in regard to a subcontractor's direct lien by the use of the filing provision of the statute, it does not follow that this statute contemplated the grant of a personal judgment against such owner where there was no filing of the construction contract. See G. Lane, Mechanic's Liens in Colorado § 136. In Lowrey v. Svard, 8 Colo. App. 357, 46 P. 619, it was stated:
"Under the lien statutes no judgment in personam can be entered against a defendant unless it be expressly authorized by statute."
The trial court further found that Simpson had "* * * failed to prove any privity of contract with Defendant." This finding was adequately supported by the record and will not be disturbed on review. The Colorado rule is clear that under the lien statutes there can be no in personam judgment against a defendant in the absence of privity of contract. Brannan Sand & Gravel v. Santa Fe Land & Improvement Co., 138 Colo. 314, 332 P.2d 892. We therefore hold that the court did not err by failing to grant either Simpson or Olds a personal judgment on the amounts due Simpson under the mechanic's lien.

IV.
The trial court found that Olds was entitled to judgment "plus interest at 6% per annum from November 15, 1966." But the court only ordered that defendant pay interest from the date of judgment. As to the claimant Simpson, the court allowed interest from the date of judgment only. The defendants in error, Olds and Simpson, contend that the judgment should be amended in order to allow interest from *469 the date their claims became due until the date of judgment. We agree.
In the absence of agreement between the parties, interest is statutorily regulated. C.R.S.1963, 73-1-2, provides:
"Creditors shall be allowed to receive interest * * * at the rate of six per cent per annum * * * on money due on account from the date when the same became due, * * *."
In Buerger Investment Co. v. Salzer Lumber Co., 77 Colo. 401, 237 P. 162, the Colorado Supreme Court held that interest allowable on mechanics' lien claims is an incident to a debt against the property. See Joralmon v. McPhee, 31 Colo. 26, 71 P. 419. Money due "on account," within the meaning of the above cited statute and its predecessors, if liquidated, is subject to interest at the legal rate from the date due. Donley v. Bailey, 48 Colo. 373, 110 P. 65. The debt in this case is not unliquidated merely because it is disputed. In Florence & Cripple Creek Railroad Co. v. Tennant, 32 Colo. 71, 75 P. 410, the Supreme Court said:
"Debtors cannot avoid the payment of interest by disputing the account, and when at the trial the account, or any portion of it is established, the creditor is entitled to interest upon the amount found to be due."
Interest at the legal rate of six percent should have been awarded both Simpson and Olds as of the dates of filing the mechanics' liens. York Plumbing & Heating Co. v. Groussman Investment Co., 166 Colo. 382, 443 P.2d 986; Rice v. Rhone, 49 Colo. 41, 111 P. 585.
We find defendant's assignments of error in regard to evidentiary matters to be without merit.
The judgment of the trial court is reversed only insofar as it relates to interest, and the cause is remanded for amendment of judgment to include interest at the rate of six percent (6%) per annum on the sums due under the mechanics' liens from the dates of filing such liens.
SILVERSTEIN, C. J., and DUFFORD, J., concur.