No. 19,090.

FRANK VIDER *v.* FRANK ZAVISLAN.
(362 P. [2d] 163)

Decided May 22, 1961. Rehearing denied June 12, 1961.

Messrs. BELLINGER AND FARICY, for plaintiff in error.

Messrs. PETERSEN, EVENSEN AND EVANS, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE FRANTZ.

ZAVISLAN, plaintiff below, was successful in his suit to quiet title to certain real property, a sizable portion of which is involved in this proceeding. In his complaint, he alleged that he was the owner and in possession of the property in controversy. Vider answered, pleading title in himself. To this answer Zavislan filed a reply in two parts, the second of which sought to defeat Vider's title and establish title in Zavislan under two seven-year statutes of limitation.

His reliance upon the two seven-year statutes of limitation appears from these paragraphs of his reply:

"2. That plaintiff has been in actual and continuous possession of the property covered and conveyed by said deed and has paid all taxes legally assessed thereon for a period in excess of seven successive years next prior to the commencement of this action.

"3. That plaintiff has been in constructive possession of the vacant and unoccupied property covered and conveyed by said deed and has paid all taxes legally assessed thereon for a period in excess of seven successive years next prior to the commencement of this action."

Much of the evidence adduced at the trial in support of the contentions of the parties was documentary and undisputed. The chief dispute arose over who had possession of the property in controversy. There was evidence in support of Zavislan's claim that he had actual

possession of the property for a period of approximately two years. Vider attempted to show that he had actual possession during the times in controversy.

The property in dispute was platted into lots and blocks and the plat recorded in the public records of Pueblo County on April 5, 1889. Vacation of the plat was recorded in said public records on June 22, 1896.

On November 25, 1904, certificate of purchase No. 21189 was issued to the County of Pueblo for failure to pay the 1903 taxes. On June 28, 1939, this certificate of purchase was assigned to H. J. Claas, Vider's predecessor in interest, who thereafter, on June 4, 1941, received a treasurer's deed, which was recorded on the same day. On March 29, 1944, another treasurer's deed, predicated upon the same certificate of purchase No. 21189, was issued to the County of Pueblo, and forms the basis for the issuance of the deed to Zavislan.

On July 11, 1945, Claas delivered his quit claim deed to the property in dispute and his warranty deed to the property contiguous thereto to Vider, who recorded these deeds on July 13, 1945. Vider moved into the premises contiguous to the property in dispute in August 1945. From that day forward he and his family have resided at said premises. Besides the home a barn and corral had been built on the contiguous property. Livestock was kept therein. The subject property, though vacant, was at times used by Vider for grazing.

On May 28, 1947, a deed from the County was issued to Zavislan, conveying Lots 1 to 17 inclusive, Block 61; Lots 1 to 34 inclusive, Block 62; Lots 1 to 18 inclusive, Block 71; and Lots 1 to 34 inclusive, Block 72; "all in Fairmount Park, Second Filing, according to the recorded plat thereof." These lots comprise a portion of the property in litigation here. In the instruments conveying to Vider and those through which he derives his interest, the property was described by metes and bounds.

On the property deeded to Zavislan he paid the taxes

for the years 1948 through 1955, after which he brought the present suit. In the course of the trial Vider offered to reimburse Zavislan for all monies expended by him in any manner on the subject property. An oral stipulation confirming such offer, depending upon a judgment favorable to Vider, was made by the parties in court.

At the conclusion of the case, the court made extensive findings and conclusions of law, after which it entered judgment in favor of Zavislan and against Vider.

In its findings the trial court found that Zavislan had permitted one Ellis and one Hyde "to construct and maintain a fence around a portion of the property in controversy and for approximately two years said Ellis and Hyde used said property with [Zavislan's] permission for the purpose of grazing horses thereon; that said fence was taken down by Ellis and Hyde in about 1950 * * *"

The court further found "[t]hat the land in question is open prairie land, has been without buildings, cultivation or improvements of any kind from 1946 through 1956, except for the Ellis-Hyde fence, some temporary drift fences placed thereon by Vider from time to time * * *"

By another finding the trial court stated "[t]hat aside from the period when Ellis and Hyde had a permanent fence surrounding a portion of the property in dispute, said property has at all times been vacant and unoccupied property until shortly prior to the institution of this suit * * *"

The trial court concluded in part:

"4. That possession of Ellis and Hyde for the period between 1948 and 1950 constituted possession of plaintiff Zavislan.

"5. That prior to the erection of and subsequent to the removal of the Ellis-Hyde fence in 1950, the land in controversy constituted and remained vacant and unoccupied land until possession was taken by the North-

west Engineering Company under contract with plaintiff shortly prior to the institution of this suit.

"6. That plaintiff has been in actual or constructive possession of said disputed property, for a period in excess of seven successive years next prior to the commencement of this action under color of title and payment of all taxes levied or assessed.

"7. That C.R.S. 1953 Chapter 118-7-8 and 118-7-9 are to be considered to be in pari materia, and the actual possession of plaintiff for the two year period that Ellis and Hyde exercised control of this property, and the constructive possession of plaintiff while said property was vacant and unoccupied and while plaintiff was paying taxes thereon in good faith and under color of title, may be tacked or added together to make up the seven year period required under the statute. To hold otherwise would defeat the wholesome effect of the statute by saying that the taxpayer forfeited his right to claim its benefit by taking actual possession of vacant or unoccupied land before the end of the seven year period or by relinquishing actual possession of such lands although continuing to pay the taxes thereon as vacant and unoccupied land."

 Findings of the trial court, resolving disputed evidence, are binding upon this court. Applying this oft-stated rule, we accept the finding of the trial court that for a period of approximately two years Zavislan was in actual possession of a major portion of property which formed the subject of contention between Zavislan and Vider.

Upon a consideration of the disputed facts as resolved by the trial court and the undisputed evidence, we must reverse the judgment because the applicable law does not justify conclusions drawn by the trial court and the judgment entered thereon. Several applicable principles may be resorted to, directing the result indicated, but we deem it necessary to mention and apply only three of them.

■ 1. Vider by virtue of two deeds held title in fee to two contiguous tracts of land, upon one of which he maintained his home. These two tracts of land, under the circumstances of their conveyance from Claas to Vider, and considering their character and their contiguity, form a unit. When Vider took possession of the premises upon which the home, barn and corral were located, he took actual possession of the contiguous property which is the subject of this litigation. *Yard v. Ocean Beach Ass'n,* 49 N.J. Eq. 306, 24 Atl. 729. We hold that "where one owns several tracts of land adjoining each other, and all of which he holds under deeds, patents, or other writings, and claims to the extent of his boundaries" he is "in the actual possession of the adjoining tract, as well as the one upon which he lives, if there is no actual adverse occupancy of either one of the tracts." *Everidge v. Martin,* 164 Ky. 497, 175 S.W. 1004. See *Simmons Creek Coal Co. v. Doran,* 142 U.S. 417, 12 S. Ct. 239, 35 L. Ed. 1063; *Tennis Coal Co. v. Sackett,* 172 Ky. 729, 190 S.W. 130, Ann. Cas. 1917 E 629; *Roller v. Armentrout,* 118 Va. 173, 86 S.E. 906.

■ 2. The trial court found that Zavislan had actual possession from 1948 to 1950 and constructive possession for five years. It also found that from 1946 through 1956 Vider had placed on the premises a number of temporary drift fences; that these drift fences were constructed from time to time on the property. We are persuaded that these circumstances, coupled with the fact that Vider held legal title to the property, bring into operation the rule that in case of a mixed or common possession of land by both parties to a suit, the law adjudges the rightful possession to him who holds legal title, and no length of time of possession can give title by adverse possession as against the legal title. *Truitt v. Osler,* 4 Boyce (Del.) 555, 90 Atl. 467.

3. C.R.S. '53, 118-7-8, provides for a method of becoming the legal owner of property by one in actual possession. C.R.S. '53, 118-7-9, relates to vacant and unoccu-

pied land and sets forth the manner in which one may become the legal owner of such property.

Both these sections were adopted in 1893 and were facsimiles of statutes of the state of Illinois. Both had been construed by the Supreme Court of Illinois on a number of occasions prior to 1893, the date of the enactment by our legislature. *Knight v. Lawrence,* 19 Colo. 425, 36 Pac. 242; *Empire Co. v. Howell,* 22 Colo. App. 584, 126 Pac. 1096.

█ This court has time and again held that where a statute of another state has been adopted by Colorado, and at the time of its enactment here it had been construed by the appellate court of the state from which it was borrowed, the presumption is that the legislature intended the same construction be given the statute by the courts of this state. *United States Fidelity & Guaranty Co. v. People,* 44 Colo. 557, 98 Pac. 828; *Brown v. First National Bank,* 49 Colo. 393, 113 Pac. 483; *Hallett v. Alexander,* 50 Colo. 37, 114 Pac. 490, 34 L.R.A.N.S. 328, Ann. Cas. 1912 B 1277; *Russell v. Jordan,* 58 Colo. 445, 147 Pac. 693, Ann. Cas. 1916 C 760; *Twilley v. Durkee,* 72 Colo. 444, 211 Pac. 668; *Boise-Payette Co. v. Longwedel,* 88 Colo. 233, 295 Pac. 791; *McCord Mercantile Co. v. McIntyre,* 25 Colo. App. 376, 138 Pac. 59.

Prior to 1893 the Supreme Court of Illinois interpreted the statutes of that state, of which C.R.S. '53, 118-7-8 and 118-7-9 are counterparts, in the cases of *Dickerson v. Breeden,* 30 Ill. 279; *Ross v. Coat,* 58 Ill. 53; *Whitney v. Stevens,* 89 Ill. 53; *Iberg v. Webb,* 96 Ill. 415.

As said in the case of *Ross v. Coat,* supra:

"To constitute a bar, a party must show a complete performance under either the eighth or ninth section. He can not show part performance under one section and part under the other, and thus blend the provisions of both sections.

"The bar must be complete and distinct under the one or the other section. A party can not avail of the provisions of both sections at the same time."

There is nothing in the record of this case to overcome the presumption that the construction by the Supreme Court of Illinois was adopted along with the statute by the legislature. Under these circumstances, we hold that the trial court was in error in determining that a fusion of actual and constructive possession for seven years, together with the other necessary elements to become the legal owner, was proper and that by reason of such fusion of possessions Zavislan became and was the owner of the property in question.

The judgment is reversed and the cause remanded with directions to carry out the stipulation of the parties concerning an offer to reimburse Zavislan all sums expended by him in connection with the property in question.

MR. CHIEF JUSTICE HALL and MR. JUSTICE DAY concur.