FRED O. HARRER, Plaintiff and Respondent, v. NORTHERN PACIFIC RAILWAY COMPANY, a corporation, Defendant and Appellant.

No. 10929.
Submitted January 13, 1966. Decided February 2, 1966.
410 P.2d 713.

Lamey, Crowley, Kilbourne, Haughey & Hanson, Bruce Toole (argued), Billings, for appellant.

H. A. Bolinger, Jr. (argued), Bozeman, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Defendant-appellant, Northern Pacific Railway Company, brings this appeal from a declaratory judgment rendered in the district court of Gallatin County in favor of the plaintiff-respondent, Fred O. Harrer.

The facts are that in the days of the steam locomotive, the defendant maintained two sets of track between Bozeman and Logan, Montana. One of these tracks was direct and of fairly steep grade. To facilitate the movement of heavy freight trains, the company, in 1917, erected what is known as the "Bozeman-Logan Low Line." The Low Line followed a circuitous route in order to lessen the grade, thereby enabling locomotives then in use to pull heavy loads. With the advent of the diesel engine, the Low Line served no further purpose and it was abandoned. Several irrigation ditches were crossed in the construction of the Low Line, one of which was known as the Beck and Border Canal. In order to maintain the required grade, the railroad constructed a cut some 20 feet deep at the point where it intersected the Beck and Border Canal, and it was necessary, therefore, to construct a cement drop, siphon and flume to carry the water under the tracks before returning it to the canal.

In 1957, the Railroad abandoned its use of the Low Line, removed its rails and equipment, and in 1960 quitclaimed the property to one Kenneth B. Anderson, who owned the lands adjoining the siphon and flume. Thereafter, the railroad has refused to maintain the cement drop, siphon and wooden flume —a function or service it had performed since 1917.

Both parties agree that considerable effort and expense is required to maintain the siphon. It must be drained in wintertime to prevent freezing; it must be kept free of mud, gravel and debris; and the cement and wooden portions must be repaired and replaced from time to time.

The lower court held "that this a declaratory judgment de-

claring the rights of the parties to this action and * * * that the defendant is legally obligated at this time to continue to maintain the siphon and flume involved in the action known as the Beck and Border Ditch * * * or to replace such siphon and flume in such a manner as to restore the ditch in which the plaintiff owns an interest to its former state of usefulness so that it will not require continual care, maintenance and replacement other than ordinary maintenance that would have been required for the ditch prior to the construction of the siphon and flume."

The Beck and Border Canal is an irrigation ditch in which many persons other than plaintiff have undivided interests. The Canal delivers the plaintiff's adjudicated water right of 491 inches to his land from the West Gallatin River.

Both parties agree there are but three questions to be answered:

(1) What was the duty enjoined upon the defendant by R.C.M.1947, § 72-205, subd. 5?

(2) Were the proper and necessary parties before the court?

(3) Is the action barred by limitation?

R.C.M.1947, § 72-205, subd. 5, states in part:

"Every railroad corporation has power: * * *

"5. To construct their road across, along, or upon any * * * canal, ditch, or flume which the route of its road intersects, crosses, or runs along * * *; but the corporation shall restore the * * * canal, ditch, or flume thus intersected to its former state of usefulness, as near as may be, or so that the railroad shall not unnecessarily impair its usefulness or injure its franchise."

Heckaman v. Northern Pacific Ry. Co., 93 Mont. 363, 20 P.2d 258, construed this statute and removed the ambiguous meaning of *"its* usefulness or injure *its* franchise" by saying that "its" did not refer to the railroad, but rather to those facilities intersected by the route of the Railroad.

The Railroad obeyed the command of the statute by con-

structing the facility and maintaining it. This facility permitted passage of water in amounts equal to the water rights of the lower land owners, *but it did so only so long as it received proper care and maintenance.* If the railroad had refused to maintain the siphon prior to its abandonment of the route, it is clear that it would have been in violation of the statutory duty imposed upon its right to cross such canals and ditches. But as long as the railroad did maintain the siphon it constructed, the plaintiff's water right was restored and the usefulness of the ditch was not unnecessarily impaired or injured, and under such circumstances, the plaintiff had no valid claim for interference with his water rights.

The question now is whether the abandonment and sale of the railroad's property changes its duties and obligations regarding the Beck and Border Canal and the plaintiff's water rights.

Diligent search by both counsel and this court have failed to reveal authority or precedent to guide us.

■■ The following concepts require no citation of authority: One who has appropriated water in Montana acquires a distinct property right; this water right is a species of property in and of itself and may exist separate and independent of a ditch right; each is capable of several and distinct injuries; both water rights and ditch rights are considered property of the highest order.

■ Through R.C.M.1947, § 72-205, subd. 5, the State of Montana is, in effect, exercising its power of eminent domain through an instrumentality—railroad companies. In the same breath, however, the legislature recognizes the importance of water rights and ditch rights. It emphatically states that, even though an interference with such rights is permissible when required for the general public benefit, the railroad "shall restore" such rights to their former state of usefulness.

It must be remembered that the point where the route of the railroad cut through the Beck and Border Canal was not

located on the plaintiff's land. No compensation was paid the plaintiff in 1917 when the railroad built its right-of-way. No real injury was done to the plaintiff at that time.

This court feels that the act of abandonment of property taken in the first instance under the theory of eminent domain, and statutorily burdened with the duties as set forth in section 72-205, subd. 5, does not of itself relieve the condemnor of such duties and obligations. The act of condemnation is subject to due process of law, and the abandonment of property so acquired, so far as it affects those property rights is also subject to due process. This seems to be particularly clear when one realizes that condemnation is supported by the concept that the land is necessary for the general benefit of the public. This justifies interference with private interests and ownership. Abandonment of property so acquired is in this case founded upon no such justification.

The second question put to this court is whether the proper and necessary parties were before the court. Several persons other than the plaintiff own land below the siphon. Each of these persons have interests similar to the plaintiff's, i. e., they are the owners of water rights and are serviced by the Beck and Border Canal. The so-called "Beck and Border Canal Company" is nothing more than an aggregation of all the owners of water rights, both above and below the siphon, who use the ditch. Each of these owners thus acquires an undivided interest in the ditch proportionate in size to the size of their respective water rights. The difficulty, and this again seems to be a unique situation, of determining proper and necessary parties in this action stems from the fact that the siphon, if it should fail to function properly, interferes with two separate and distinct rights—the water right and the ditch right—but it would so interfere only with those rights owned by persons below the siphon. This action was not brought as a class action relating to interference with the ditch rights, nor, so far as we can determine from this record, could it have been, since those above the siphon are not affected by it. It was

brought primarily upon the grounds that the plaintiff's water right was in danger of being interfered with unless the siphon was properly maintained or the canal restored to its original condition.

Rule 57, M.R.Civ.P., concerning declaratory judgments leaves in force R.C.M.1947, §§ 93-8901 to 93-8916, inclusive.

"93-8901. Courts of record * * * shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed * * *."

"93-8911. When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding * * *."

"93-8912. This act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and it is to be liberally construed and administered."

For the purpose of this declaratory judgment action, wherein the question was whether the defendant railroad company was duty-bound to maintain the siphon or rebuild the canal to its prior usefulness, so as to prevent interference with the plaintiff's water right and damage to his land, the court did not abuse its discretion by proceeding to declare the rights in question and place such duty upon the defendant without first joining other persons also having an interest in the Beck and Border Canal. The judgment places the burden upon the railroad to preserve the plaintiff's water right as it is affected by the siphon. That such a judgment necessarily affects the ditch rights of others does not require that such other persons be joined in the action under the facts of this case; although we recognize under the Rules either or both parties might have joined them.

The defendant's argument that it cannot proceed to maintain the siphon or to rebuild the canal since it no longer owns the land and has no right to access is without merit. The

railroad quitclaimed the land to Anderson, who at the time of the transfer, specifically rejected liability for third party claims concerning the property on which the siphon is located. Further, the plaintfif unquestionably has the right to go upon Anderson's land to repair and maintain the ditch. 2 Kinney on Irrigation and Water Rights, pp. 1753-1754, states that:

"Where a permanent easement has once been acquired over the lands of another, and the ditch or canal has once been constructed, the owner of the primary easement has the right, as a secondary easement, to go upon the lands and remove obstructions from the ditch, or to make other repairs necessary, consistent with the full enjoyment of the easement * * *. But these secondary easements must be exercised only when necessary, and in such a reasonable manner as not to needlessly increase the burden upon the servient tenement."

The railroad, having the duty to maintain or rebuild the canal, acquires the plaintiff's secondary easement, or right to access to accomplish such obligations. See, also, Hughes v. King, 142 Mont. 227, 383 P.2d 816, and cases therein cited.

The third question before this court is whether the action was barred by limitation. Defendant argues that the action falls under section 93-2607, R.C.M.1947, in that it is an action upon a liability created by statute, barred within two years, and that under this theory the cause of action accrued at the time of or within a reasonable time after the initial construction of the railroad. But, as revealed in our previous discussion, the due process with which we are concerned here is due process as it affects property rights by reason of the abandonment of property by the railroad. In any event, defendant asserts that the statute commenced to run when plaintiff was told by the railroad company that it would not repair the siphon. We do not agree with this contention. In our view had the plaintiff waited until damage occurred due to failure of the siphon, clearly, a claim would have arisen. By this action, the plaintiff seeks to avoid damages by obtaining an early declaration of the rights and duties between the parties.

No claim has as yet accrued upon which any limitation can run.

The judgment is affirmed.

MR. JUSTICES JOHN C. HARRISON, DOYLE, ADAIR and CASTLES concur.