ELMER SMITH and MABEL SMITH, Husband and Wife, Plaintiffs and Appellants, v. ROY C. KRUTAR and MARY E. KRUTAR, Husband and Wife, Defendants and Respondents.

No. 11316.
Submitted May 17, 1969.
Decided July 15, 1969.
457 P2d 459.

Malcolm MacCalman, argued, Donald J. Beighle, argued, Deer Lodge, for appellants.

Raymond J. Fox and Michael M. Nash, Raymond J. Fox, argued, Missoula, for respondents.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an appeal by plaintiffs from a judgment for defendants in an action seeking an injunction and damages in connection with defendants' use of waters from three streams. The case was tried in the district court of Powell County without a jury.

Basically this case involves the ownership of disputed water rights in the North Fork of the Blackfoot river and two smaller tributaries. Dry Creek and Spring Creek. The parties herein are adjoining landowners.

In 1938 a decree entered by this same district court in Cause #2259 (Jacobson, et al., v. Copenhaver, et al.), adjudicated certain water rights involving the same river and creeks here in dispute. By this decree plaintiffs' predecessors in interest received certain rights to the water in the North Fork of the Blackfoot river, from which plaintiffs received their water rights. Defendants' predecessors in interest, after having been served in that prior adjudication, withdrew their answer and

refused to further plead, their default was entered, and a default judgment was entered against them. As a consequence defendants' predecessors in interest received no water rights under that adjudication.

Defendants, by warranty deed executed in 1949, obtained their lands and a 1/10th interest in the Ryan-Healey ditch, which ditch carries water diverted from the North Fork of the Blackfoot river for purposes of irriagtion. Plaintiffs, by warranty deed executed in 1954, obtained their lands and the right to 900 miners' inches of water from the North Fork of the Blackfoot river carried by the Ryan-Healey ditch. In dispute here is defendants' claimed right to 100 miner's inches of water also carried by the Ryan-Healey ditch.

The district court's finding of fact and conclusions of law are set out briefly as follows: (1) that the defendants are the owners of a 1/10th interest in and to the Ryan-Healey ditch; that by reason of the adverse use of waters therein, defendants are the owners of 100 miner's inches of the water of the North Fork of the Blackfoot river; (2) that the plaintiffs are the owners of the right to 900 miner's inches of the water of the North Fork of the Blackfoot river conveyed by and through the Ryan-Healey ditch; (3) that the rights of defendants and plaintiffs are of equal priority; (4) that plaintiffs are estopped from denying that defendants have any interest in the Ryan-Healey ditch; (5) that the defendants are the owners of 600 miner's inches of water of Spring Creek and Dry Creek, which were appropriated and diverted on June 26, 1932 by defendants' predecessors; (6) that plaintiffs are the owners of 1,000 miner's inches of the water of Dry Creek, which were appropriated and diverted on June 1, 1945 by plaintiffs' predecessors; and (7) that the parties are subject to and bound by the decree and judgment in Cause #2259, supra, adjudicating the waters of the North Fork of the Blackfoot river to the same extent as if they were original parties to said decree.

The district court also denied the claim of plaintiffs for

special and punitive damages as well as plaintiffs' request for an injunction enjoining defendants from interfering with their use of the waters in question.

Basically, the questions presented on this appeal are as follows: (1) whether defendants are entitled to 100 miner's inches of water conveyed by the Ryan-Healey ditch from the North Fork of the Blackfoot river; (2) whether the lower court's ruling that defendants are entitled to the 100 miner's inches of water constitutes a collateral attack on the judgment rendered in Cause #2259, supra, because it establishes a new and differing right of equal priority and amends existing rights fixed by that cause; (3) whether plaintiffs have a right to 1,000 miner's inches of water from Spring Creek; (4) whether plaintiffs have a right prior to that of defendants to the use of the water from Dry Creek; (5) whether plaintiffs have a right to damages; and (6) whether plaintiffs are now foreclosed from this appeal by their failure to except to the findings of fact and conclusions of law entered by the district court.

Of prime importance to this appeal is the question of whether defendants are entitled to 100 miner's inches of water in question. We hold they are not. However, defendants have proposed several theories upon which to establish this right, and upon which the lower court based its findings of fact and conclusions of law, which require discussion.

The first, and basic theory, is that defendants had established a right to the water by adverse user of that water for the required statutory time period. Defendants sought to show such adverse user during three distinct periods of time: (1) prior to the decree entered in Cause #2259; (2) from 1938 to 1949, and (3) from 1954 to 1962.

In King v. Schultz, 141 Mont. 94, 100, 375 P.2d 108 (1962), this Court reiterated the repeatedly established rule that in this state the one claiming rights by adverse possession has the burden of proving every element of his claim. Further, in that case, this Court stated:

"It is equally well settled that in order to acquire a right by adverse user or prescription, it is essential that the proof must show that the use has been (a) continuous for the statutory period which in this state is [five] years [section 93-2513, R.C.M.1947]; (b) exclusive (uninterrupted, peaceable); (c) open (notorious); (d) under claim of right (color of title); (e) hostile and an invasion of another's rights which he has a chance to prevent."

Developing case law in this state provides three basic prerequisites for establishing adverse user: (1) that the claimant used water at a time when plaintiff had need of it; (2) that he used it in such a substantial manner as to notify plaintiff that it was being deprived of water to which it was entitled; and (3) that during all of that period, plaintiff could have maintained an action against him for so using the water. King v. Schultz, supra, 101.

As to the contention that defendants established their claim of adverse user during the period prior to the entry of the court decree in Cause #2259, the doctrine of res judicata prevents them from establishing any water rights to the water conveyed by the Ryan-Healey ditch. In Smith v. Baxter, 148 Mont. 291, 294, 419 P.2d 752 (1966), this Court held that four elements must exist if the plea of res judicata is to be sustained. These criteria are:

"(1) the parties or their privies must be the same; (2) the subject-matter of the action must be the same; (3) the issues must be the same, and must relate to the same subject-matter; and (4) the capacities of the persons must be the same in reference to the subject-matter and to the issues between them."

Upon a review of the decree and judgment entered in Cause #2259, we find these four criteria clearly met. The predecessors in interest of the parties now before this Court were represented, and the issues involved there identical to those now in disput.

Looking to the contention that defendants established

adverse user during the period 1938 to 1949, the evidence offered by the defendants fails to show that the use of the water by their predecessors in interest was hostile to the rights of plaintiff's predecessors in interest, or that it was under a claim of title. Rather, the evidence shows if anything, that the use of the water by the defendants' predecessors in interest was permissive in nature. This hardly substantiates a claim of adverse user.

During the period 1954 to 1962, the date of the trial, the use of the water by defendants, as shown by the evidence, was anything but peaceable or uninterrupted. The testimony of plaintiffs and defendants demonstrates that during this whole time plaintiffs attempted to prevent defendants from using water being conveyed by the Ryan-Healey ditch, and had on many occasions destroyed pipes and headgates placed on the ditch by the defendants. Again, defendants have failed to carry the burden of proving adverse user, and therefore their claim must of necessity fail.

A second theory presented by defendants to secure the right to the use of the 100 miner's inches of water is that since they have an undisputed 1/10th interest in the ditch, they therefore have a right to the use of 1/10th of all the water flowing in that ditch. This they have calculated to be 100 miner's inches of water. In this contention, we fail to find support in the evidence or in the law.

In this state a water right and a ditch right may exist as separate and independent species of property, and each is capable of several and distinct injuries. Harrer v. North Pacific Ry., 147 Mont. 130, 410 P.2d 713 (1966). Standing alone, the ownership of a 1/10th interest in the ditch is not synonymous with a 1/10th interest in the water, nor is it sufficient to establish a water right in the defendants.

Finally, as a third theory upon which to establish their right to the 100 miner's inches from the North Fork of the Blackfoot river, defendants contend that because of the work and money

expended by them in repairing the Ryan-Healey ditch, and their reliance upon what they feel to be admissions regarding their interest in the ditch by the predecessors of the plaintiffs, the plaintiffs are therefore estopped from denying the defendants' interest in the ditch. With this, we cannot agree.

Generally speaking, estoppel arises when a party by his acts, conduct or acquiescence has caused another in good faith to change his position for the worse. Hustad v. Reed, 133 Mont. 211, 223, 321 P.2d 1083 (1958). The following six elements have been held necessary in order for the doctrine of equitable estoppel to apply: (1) there must be conduct, acts, language, or silence amounting to a representation or a concealment of material facts; (2) these facts must be known to the party estopped at the time of his conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him; (3) the truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time it was acted upon by him; (4) the conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under circumstances that it is both natural and probable that it will be so acted upon; (5) the conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it, and (6) he must in fact act upon it in such a manner as to change his position for the worse.

After a careful examination of the evidence, it cannot be found that the conduct of plaintiffs caused the defendants to act in reliance upon said conduct to the detriment of the defendants. Rather, the plaintiffs have made it quite clear, ever since they acquired their property, that the defendants had no water right in the Ryan-Healey ditch. Further, the plaintiffs have never given the defendants the least hope or expectation of ever having such a right, nor have they lead the defendants to believe that they did in fact ever have water rights in the Ryan-Healey ditch.

In view of the foregoing, we hold that the defendants are not entitled to 100 miner's inches of the water conveyed by the Ryan-Healey ditch from the North Fork of the Blackfoot river.

The plaintiffs have raised the issue that the district court's ruling that defendants are entitled to the 100 miner's inches of water constitutes a collateral attack on the judgment rendered in Cause #2259, because it establishes a new and different right of equal priority and amends existing rights fixed by that cause. Under our holding that defendants have no water rights to 100 miner's inches of water, no collateral attack on the prior judgment is involved and this issue disappears.

The next issue raised by this appeal is whether plaintiffs have a right to 1,000 miner's inches of water from Spring Creek. The district court's finding denied the plaintiffs any right to the water of Spring Creek. Plaintiffs have not presented this Court with any evidence to establish a right to the waters of Spring Creek, nor have they presented any evidence to dispute the presumption that the findings of the district court were proper as to this point. This Court will not reverse the findings of the trial court unless there is a clear preponderance of the evidence against such findings. Spencer v. Robertson, 151 Mont. 507, 445 P.2d 48. Without any evidence to the contrary, we therefore affirm the district court's determination on this point.

Another issue raised by the plaintiffs is whether plaintiffs have a right prior to that of the defendants to the use of the waters of Dry Creek. The district court found that defendants are the owners of 600 miner's inches of water from Spring Creek and Dry Creek with an appropriation and diversion date of June 26, 1932, while the plaintiffs are the owners of 1,000 miner's inches of water from Dry Creek with an appropriation and diversion date of June 1, 1945. In such finding, this court finds no error.

The plaintiffs seek to establish this right through an appropri-

ation made in 1899 by an earlier predecessor in interest. However, the evidence on this point is insufficient to clearly show that the plaintiffs have been conveyed any right from the 1899 appropriation. The land to which this 1899 water right was appurtenant has, since the time of the early appropriation, been subdivided and portions of it conveyed to others. Further, the plaintiffs have offered no proof tracing their right to the water of Dry Creek by virtue of the original appropriation, or showing that in fact this right was conveyed to them exclusively, particularly in light of subsequent partitions of the land. We therefore affirm the holding of the district court in regard to the amounts of water and the priority dates of the rights on Dry Creek of the respective parties.

As to the question of whether the plaintiffs were entitled to damages, we affirm the holding of the district court which refused to award damages as requested by plaintiffs. Upon examining the evidence, it does not establish that plaintiffs actually suffered damages. There was testimony presented to the effect that if they had had the water in question, plaintiffs could have grown more crops. However, this was merely speculative, and this Court will not reverse findings of the lower court unless there is a clear preponderance of the evidence against such findings. Spencer v. Robertson, supra.

Plaintiffs also claim they are entitled to punitive damages as provided for by section 17-208, R.C.M.1947, which states:

"In any action for a breach of an obligation not arising from a contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

Upon a careful review of the evidence, we cannot find that the defendants were guilty of oppression, fraud, or malice. Granting that the plaintiffs had for several years been contest-

were only attempting to take what they believed themselves in ing the right of defendants to the water in question, defendants good faith to be entitled to, and no more, from the Ryan-Healey ditch. As to malice, there is no clear evidence preponderating against the trial court's finding.

It must be remembered that exemplary damages are extraordinary in their nature and are used by way of punishment or by way of example only when the conduct of the defendant clearly shows that he is deserving of such special treatment. Spackman v. Ralph M. Parsons Co., 147 Mont. 500, 414 P.2d 918. We can find nothing in the record to indicate that the defendants are deserving of such treatment in this case. Further, it is the rule in this state that there can be no recovery of exemplary or punitive damages unless the plaintiff is entitled to actual damages. Galiger v. Hansen, 133 Mont. 34, 319 P.2d 1051.

The last issue requires little discussion. This issue was neither raised nor discussed by either party in the original or reply briefs. Defendants raise this issue of plaintiffs' failure to except to defects in the district court's finding for the first time in their ''Supplemental Brief'' filed 3 days before argument on this appeal. A supplemental brief may not be used to inject a new issue into an appeal particularly where, as here, such issue is procedural only, not involving the merits. To permit such practice imposes an unconscionable burden on the adverse party and upon this Court.

For the foregoing reasons we therefore reverse that part of the district court's judgment awarding defendants 100 miner's inches of water conveyed by the Ryan-Healey ditch from the North Fork of the Blackfoot river; direct the district court to enter judgment enjoining defendants from interfering with the use of the Ryan-Healey ditch and its waters by the plaintiffs, and to enter aprropriate findings of fact and conclusions of law supporting the same. As to the remainder of the district

court's findings of fact, conclusions of law, and judgment, we affirm.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, JOHN CONWAY HARRISON and BONNER, concur.