No. 85-617

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

PERCY A. MIELKE and DEBORAH G.
MIELKE,
                Plaintiff and Respondents,

        -vs-

DALY DITCHES IRRIGATION DISTRICT AND
BOARD OF COMMISSIONERS OF DALY DITCHES
IRRIGATION DISTRICT,
                Defendants and Appellants,

-------------------------

DALY DITCHES IRRIGATION DISTRICT AND
BOARD OF COMMISSIONERS OF DALY DITCHES
IRRIGATION DISTRICT,
                Third-Party Plaintiffs and Appellants,

        -vs-

THE STATE OF MONTANA and DEPARTMENT OF NATURAL
RESOURCES AND CONSERVATION OF THE STATE OF MONTANA,

        Third-Party Defendants and Appellants.

---

APPEAL FROM:  District Court of the Fourth Judicial District,
              In and for the County of Ravalli,
              The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Larry Persson argued for Daly Ditches, Hamilton,
                Montana
                Candace West argued for Dept. Natural Resources,
                Helena, Montana

        For Respondent:

                Jeffrey H. Langton argued for Mielke, Hamilton, Montana

---

                        Submitted:  December 9, 1986

                        Decided:  January 16, 1987

Filed:   **JAN 16 1987**

                        *Ethel M. Harrison*
                    _____
                            Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The Daly Ditches Irrigation District, the State of Montana and the Department of Natural Resources and Conservation (DNRC) of the State of Montana appeal herein from a final decision of the District Court, Fourth Judicial District, County of Ravalli, which held that the plaintiffs Percy and Deborah Mielke have a first priority water right for irrigation from Gird Creek on the basis of adverse use.

We determine under the facts of this case that the Mielkes have failed to establish the requisite elements to acquire the prescriptive water right which was accorded to them by the District Court.

The plaintiffs Mielkes are residents of Ravalli County, Montana, and own farm lands of which 98.44 acres produce crops by irrigation. They obtained irrigation water through a lateral ditch owned by them and a headgate on Gird Creek which diverted water from the creek through their lateral. Gird Creek is a part of the Daly Ditch Irrigation District system.

In July, 1983, the Daly Ditches Irrigation District locked the headgate through which Mielkes diverted water from Gird Creek to irrigate their lands. This caused the Mielkes to commence an action in District Court against the defendant Daly Ditches Irrigation District. In their complaint, the Mielkes alleged that they were the owners by appropriation of 200 inches of water from Gird Creek and they asked for an injunction against the inference by the District with their water right. The District filed its answer, generally denying the allegations of the complaint, pleading

- 2 -

affirmatively that the water rights have been transferred by a predecessor so as to sever the water rights from the land and counterclaiming against the Mielkes for fees for the 1983 irrigating season.

The Mielkes responded to the counterclaim and affirmative defenses by general denial, and by alleging affirmatively that they had an adverse use right to irrigation water for 98.44 acres. The Mielkes further contended that Contract No. 90, which provided water to the Mielkes at the rate of $1.25 per acre-foot was perpetual in its terms and that the State had wrongfully raised the fees during the period the State operated the project.

The State of Montana and the DNRC were brought into the action as third party defendants by the District on a claim of indemnity.

The Daly Ditches Irrigation District (sometimes referred to as the Daly Ditch Project) is a water project located in Ravalli County. The project consists of several irrigation ditches and systems designed to supply water to irrigable lands near Hamilton, Montana, on the east side of the Bitterroot River. Historically, the Daly Ditch Project came into existence as a result of the acquisition of lands and water rights around the turn of the century by the Butte copper king, Marcus Daly.

Mielkes' present farm lands were first described as part of lands passing by patents issued to Winfield Sherrill and Jacob Sherrill, dated 1889 and 1895, respectively. In 1888, Jacob Sherrill filed in the county records a notice of appropriation for 600 miner's inches of water from Gird Creek, claiming an original appropriation date of 1864.

In June, 1890, Winfield Sherrill and the Estate of Jacob Sherrill conveyed title to the land with the appropriated water right to James C. Flanner. In September, 1890, Flanner conveyed title to the land and the water right to James W. Hamilton. Hamilton, in turn, conveyed the same to Marcus Daly in October, 1890.

In December, 1901, the Estate of Marcus Daly conveyed the various ditch and water rights acquired during Daly's lifetime (including the waters of Gird Creek) to Ravalli Land and Irrigation Company. On the same date, the estate conveyed many parcels of land (including what is now the Mielkes' property) to Bitterroot Stock Farm, another corporation. The land deed to Bitterroot Stock Farm specifically excepted and reserved therefrom all water rights, water ditches and rights-of-way for ditches which attached to or were part of the lands conveyed. In legal effect, then, Daly's lands were conveyed to the Bitterroot Stock Farm. The water rights, ditches and easements for ditches, which were formerly held by Daly as appurtenant to the lands were separated and conveyed to Ravalli Land and Irrigation Company.

In 1920 and 1934, John Kalberer (Mielkes' predecessor in interest) purchased land from the Bitterroot Stock Farm. At the same time, he also entered into water contracts with the Ravalli Land and Irrigation Company for the purchase of water to irrigate his purchased lands. The water contracts were designated as Contract or Account No. 90.

In 1946, Mielkes purchased the lands from Kalberer, and took from him an assignment of Contract No. 90 for the irrigation water. Mielkes currently irrigate 98.44 acres. Under Contract No. 90 with Ravalli Land and Irrigation

Company, Mielkes purchased (after Mielkes sold off 10 acres) water to irrigate 50 acres.

While Kalberer was still the owner of the lands, in 1943, Ravalli Land and Irrigation Company had conveyed all of its right, title and interest in its water rights, ditches, easements, headgates and other structures to the State of Montana. The State, under the Water Conservation Board (now DNRC) took over all the water company's water contracts as part of the Daly Ditch Project. The State had come into the picture as a part of a depression-era effort to establish public work programs through the encouragement of construction of public works. On April 23, 1943, Ravalli Land and Irrigation Company executed a deed, dated October 1, 1942, conveying all of the Ravalli Land and Irrigation Company's right, title and interest in the Daly Ditch project to the State Water Conservation Board. From that date, the Water Conservation Board, and its successor DNRC, undertook operation of the Daly Ditch Water Project and continued to perform the water contracts with purchasers such as Mielkes through the 1982 irrigation season.

Prior to 1942, the Estate of Margaret Daly (holder of about 1,250 acres) and the Bitterroot Stock Farm (holder of about 2,700 acres), as successors in interest of Marcus Daly, had not contracted with Ravalli Land and Irrigation Company for the purchase of water though these holders had continued to use water from the project on lands not sold by the Stock Farm. At the time of the take-over by the State and prior thereto, the Estate of Margaret Daly and the Bitterroot Stock Farm negotiated contracts with Ravalli Land and Irrigation Company similar to the water purchase contracts held by other water users on the project beginning February 1, 1942.

This project was the only state-owned water project that the State directly operated, maintained and repaired. In this it was unique among all the other projects owned by the State, as other state projects were operated and maintained by the various water users associations. The Daly Ditch Project, however, was never self-supporting; that is, it was never paid for wholly by the water users. From 1943, until the project was given up by the State, the debts exceeded credits by some $600,000.

In 1979, the legislature directed the DNRC to dispose of the Daly Ditch Project and to cancel and write off accounts receivable carried on the books of the Department. The legislature further directed that if the DNRC was not able to dispose of the project as provided by law, then the Daly Ditch Project should be abandoned prior to January 1, 1983. By quitclaim deed dated December 23, 1982, the DNRC transferred all of its right, title and interest in and to the Daly Ditch Project to the Ravalli Water Users Association. By quitclaim deed dated December 31, 1982, Ravalli Water Users Association transferred all of its right, title and interest in and to the Daly Ditch Water Project to the Daly Ditches Irrigation District. That District, which is the defendant in this case, is now the operator of the Daly Ditch Project.

The water contract assigned by John Kalberer to Percy A. Mielke is one of the water contracts taken over by the State of Montana as a result of the transfer from the Ravalli Land and Irrigation Company to the State Water Conservation Board. The State of Montana furnished water continuously to Mielkes under Contract No. 90 from 1946 through 1982 by means of the Daly Ditch Project. Mielke terminated his payments as billed

in 1980, though he had previously paid in every year since 1946. The Mielkes received water for irrigation from the project for the irrigation seasons of 1981 and 1982, but made no payment. By letters dated in 1982, the Mielkes asserted that they were not claiming contract water but were claiming water under an 1864 water right and therefore they had no obligation to pay any further water charges under the water contract.

The Mielkes had originally petitioned to join the Irrigation District, but have since withdrawn their petition and refused to join the District. Based on their refusal to join the District and their failure to make payments, the Irrigation District locked the headgate that diverts water to the Mielkes' property. By stipulation, during the pendency of this litigation, irrigation waters have been supplied to the Mielkes.

The payments by Mielkes under Contract No. 90 have never exceeded charges for water in excess of 50 acre units. The District Court found:

> 60. The Mielkes and their predecessors have never paid any amount to anyone, nor have they or their predecessors ever been billed for any irrigation used over and above the 50 acre units. Therefore, the Mielkes have had the free and unencumbered use of irrigation water since the Spring of 1946 and their predecessors had and enjoyed such status prior to that date. Assuming Mielkes' total water use is 200 miner's inches for 98.44 acres, the amount of water used on 48.44 acres thereof is 49% of the total or 98 miner's inches.

The District Court entered judgment for Mielkes on the basis of adverse use for 93 (sic) miner's inches as a first priority right in Gird Creek, for up to four flood irrigation applications, for seven days each, on their lands between May 1 and September 30 of each year. This is the judgment from which appeal is taken.

Since the basis of the District Court judgment is adverse use, we will discuss further facts pertaining to such judgment as found by the court from the evidence as we discuss the legal issues here.

The acquisition of title by adverse possession or title by prescription is a common law development associated with the ownership and possession of land. At first ownership and possession went hand-in-hand. The common law early recognized that one could be the owner of land and be only in constructive possession of it. There evolved the principle that constructive possession follows title and can only be overcome or defeated by actual possession adverse thereto.

In Verwolf v. Low Line Irrigation Co. (1924), 70 Mont. 570, 578, 227 P. 68, 71, we said that a water right, a right to the use of water, while it partakes of the nature of real estate, is not land in any sense, and that the right to the use of water for irrigation or other lawful purposes may be lost by one and acquired by another by prescription. In determining whether a water right is gained by prescription, it is usually necessary for the courts to apply principles that developed out of statutes or case law relating to the adverse use of real estate.

A title acquired by prescription is sufficient against all, § 70-19-405, MCA, and our statutes recognize two ways for the acquisition of such title. One may claim adverse use founded on an instrument or judgment, § 70-19-407, MCA, or by actual occupancy under claim of title not founded on an instrument or judgment. Section 70-19-409, MCA. The difference seems to be that occupancy under a claim founded on instrument or judgment, subject to statutory limitations, will provide title to the whole tract, whereas occupancy

- 8 -

under a claim not founded under an instrument or judgment gives title only to the land actually occupied.

In this case, Mielkes contend their title is derived under both methods. They apparently founded a claim of right under the Sherrill appropriation of 1864, though the legal title to this appropriation appears to have been severed from the lands when the Estate of Marcus Daly placed title to the lands in one corporation, and title to the water rights in another. Mielkes have contended before the District Court and in this Court that despite the documentary separation of the water rights from the lands, in actual practice since 1901 there has been no actual severance. Accordingly, the Mielkes have filed a statement of claim for existing water rights before the water courts of this State for 200 miner's inches of Gird Creek for use between May 1 and September 30 of each year based on the 1864 Jacob Sherrill right. Mielkes argue that the severance by conveyance of the water rights did not give rise to any physical change in the quality, quantity or availability of water used on Mielkes' lands, nor to their periods or purposes of use. Bitterroot Stock Farm had no legal title to any water rights nor contract for water after 1901, until 1942, just before the transfer to the State. On this basis, Mielkes contend that the transfers by the Daly interests in 1901 merely severed the title to the land and water rights but did not sever the use of the water to which it had been appurtenant, especially as to Gird Creek.

The District Court made reference to this argument in its findings and conclusions, but apparently did not rely on the same. If it had determined that the Mielkes' adverse use of water was founded on an instrument giving rise to color of

title, the result, applying principles derived from adverse use in land cases, would be that the Mielkes would be entitled to 200 miner's inches of water without reduction, based on a use right. Instead the District Court reduced the Mielke claim to 93 (sic) miner's inches, and from that we must conclude that the District Court, though not clearly indicating, did not find a title based on adverse use founded on an instrument or judgment. In any event, we determine that any claim of adverse use by the Mielkes in this case cannot be founded on the Sherrill appropriation which was severed from the land in the Daly transfers. The annual payment by the Mielkes on Contract No. 90 is a recognition of the paramount right of the State of Montana to sell the water as a separate property interest from the land. For that reason, we are not concerned with a dispute of fact between the parties as to whether there are sufficient waters in Gird Creek to supply 200 miner's inches of water as claimed by the Mielkes. The defendants contend that a considerable portion of the water in Gird Creek is not Gird Creek water but is supplemental water transferred by the project from Skalkaho Creek. Since we determine that Mielkes have not established adverse use to 200 miner's inches founded on an instrument or judgment, the resolution of the fact issue makes no difference.

We turn then to determine whether Mielkes have established an actual adverse use of the waters under a claim of title not founded on an instrument or judgment. All parties agree that the elements of proof required to sustain a claim of prescriptive water rights are:

1. A minimum of 5 years continuous use (10 years prior to 1953);

2. Exclusive use by the claimant (uninterrupted and peaceable);

3. Open use;

4. Use under claim of right (or color of title);

5. Use that is hostile, that is, an invasion of another's claimed right which the owner has the opportunity to prevent;

6. Use by the claimant of water at a time when the owner needed the water;

7. Use substantial enough to put the owner on notice of the deprivation; and,

8. The owner must have been in position to maintain an action to prevent the claimant's usage through the prescriptive period.

Smith v. Krutar (1969), 153 Mont. 325, 457 P.2d 459; Grimsley v. Estate of Spencer (Mont. 1983), 670 P.2d 85, 40 St.Rep. 1585.

The facts found by the District Court include the following:

Mielkes had, since the acquisition of their lands, utilized 200 miner's inches of water per year, at least three to four times during the irrigating season for a period up to seven days each time. The other contract user of irrigation water from Gird Creek was Bitterroot Stock Farm, itself, which had sold the Mielke lands to their predecessor, Kalberer, and had assigned their rights to him for 60 acres of irrigation water (of which 10 acre units had later been disposed). John Roberts of the Bitterroot Stock Farm testified that the Stock Farm had difficulty obtaining enough water downstream from Mielkes to fulfill its needs. The Mielkes and the Bitterroot Stock Farm used the water in

- 11 -

rotation, the Stock Farm taking the water when Mielkes were not using it. There was evidence that in most seasons there was enough water for both farms, although on one occasion testified to by Mielke, the Stock Farm had given up its right because there was not enough water left over after the Mielke usage to justify paying an irrigator on the Stock Farm. The irrigation use by the Mielkes of 98.44 acres was open in that there was a county road alongside their acreage and the amount of their irrigation use was open and obvious to persons traveling along that road, including the ditch riders for the District; moreover, the District headquarters was only a short distance from the Mielke farm. The lateral ditch from the headgate on Gird Creek on Mielkes' land was owned by the Mielkes and except on one occasion, they generally opened the headgate themselves when they needed to take water. Robert Lowery testified that his father, Glen Lowery, had been a ditch rider for the State in the early years of its operation of the project, and his father had told him that the Mielke right was that of "free water" which apparently was interpreted to mean a first right to the waters of Gird Creek. The father apparently believed that the Mielkes had a water right in Gird Creek based on some color of title not then explained.

Equally apparent from the record, however, are two factors which militate against a title by prescription in the Mielkes. First, the owner of the Daly Ditch Project during all of the period of claimed adverse use was the State of Montana. While the Bitterroot Stock Farm may itself have had difficulty in getting water because of the Mielke use, the Stock Farm was itself a contract user, and the evidence fails to disclose that any shortage of water which may have

occurred for the Stock Farm under its water contract was brought to the attention of the owner of the project, the State of Montana. A substantial question exists whether the State of Montana as owner had notice that the Mielkes were claiming adversely to it with respect to the waters in excess of those provided under Contract No. 90.

Secondly, for 34 years the plaintiffs paid the State of Montana what they were annually billed for the use of the water on their lands under a contract based upon 50 acres. By payment to the owners of the water right, the plaintiffs recognized in them a superior right to sell the waters to the Daly Ditch system.

In Sherlock v. Greaves (1938), 106 Mont. 206, 216, 76 P.2d 87, 90-91, where the defendants maintained a right to waters in a ditch by adverse possession, this Court said:

> Since the claim of the defendants, if any, to the waters of Crow Creek is not made under an appropriation by them, any claim to the use of the water as against the plaintiffs, who are not the owners of the "Swede Ditch," cannot be adverse to the rights of such plaintiffs. The defendants by their payment to the owners of that ditch recognize in those plaintiffs and their predecessors in interest a paramount right, and therefore there was no basis for a finding of adverse possession by the defendants. (Citing a case.)

It is, of course, true that the statement of the State's ditch rider, Lowery, seemed to indicate his belief that the Mielkes were entitled to "free water" as of right. It is also true that title by prescription can arise from mistaken assumption of title. See Calfee v. Duke (Texas 1976), 544 S.W.2d 640.

However, in this case we have the additional problem that when the Mielkes took waters from Gird Creek over the years in this case, they were taking waters admittedly paid for by them as contract waters, and mixed with waters to

which they now claim adverse use. In that regard, the possession of the Mielkes to the use of the water was not exclusive, but was in participation with the owner, the State of Montana. Title by an adverse use cannot then be gained, if we apply to this case the principles that are applicable to adverse user of lands: "[W]hen two persons are in possession the seisin follows the owner. Where either owned a better title than the other, the law will refer the joint occupancy to the right of such owner." 5 Thompson on Real Property, § 2547, at 626 (1979).

The rule is "that in case of a mixed or common possession of land by both parties to a suit, the law adjudges the rightful possession to him who holds legal title, and no length of time of possession can give title by adverse possession as against the legal title." Vider v. Zavislan (Colo. 1961), 362 P.2d 163, 166. See also Carley v. Davis (Okla. 1969), 452 P.2d 772, 776, (Mixed or shared possession is not the kind of possession that gives rise to title by prescription).

We stated in Smith v. Krutar, 153 Mont. at 330, 457 P.2d at 462:

> Developing case law in this state provides three basic prerequisites for establishing adverse user: (1) that the claimant used water at a time when the plaintiff had need of it; (2) that he used it in such a substantial manner as to notify plaintiff that it was being deprived of water to which it was entitled; and (3) that during all of that period, plaintiff could have maintained an action against him for so using the water. (Citing King v. Schultz (1962), 141 Mont. 94, 101, 375 P.2d 108, 111.)

If the use of property of another was permissive in the beginning, the use can be changed into a hostile and adverse use only by the most unequivocal conduct of the user; and the evidence of adverse use must be strictly construed against

the adverse user, and every reasonable intendment should be made in favor of the true owner. Price v. Western Life Insurance Co. (1944), 115 Mont. 509, 514, 146 P.2d 165, 167.

There is no showing here that the owner, the State of Montana, was notified by the Mielkes, that it as owner was being deprived of water to which it was entitled. Bitterroot Stock Farm may have had notice of such use; but notice to another contract user would not constitute notice to the State. The Mielkes' claim to title by prescription to the excess water over their contract supply, therefore, fails.

The defendants, State of Montana and DNRC raise a further issue that a title by adverse possession may not be acquired against the State. Mielkes object to the raising of this issue upon the grounds that it was not considered in the District Court. Our search of the record reveals that while the issue may have been raised in briefs, it does not appear that the District Court considered the issue. Because we have decided the question of title by adverse use on other grounds foregoing, we have not in this opinion considered the issue of whether an adverse title under the circumstances of this case may be acquired against the State.

The District Court concluded that Contract No. 90 had been terminated and was no longer in effect. No appeal was taken from that portion of the District Court judgment.

We reverse the judgment of this cause and remand the same to the District Court with directions to enter judgment in favor of the defendants.

John le Sheehy
_____
Justice

- 15 -

We Concur:

_____
                Chief Justice

_____

_____

_____
                Justices

The Hon. Henry Loble, District Judge, dissenting:

I respectfully dissent.

The District Court entered judgment in favor of the Mielkes, on the basis of adverse use, granting them 93 miner's inches as a first priority right in Gird Creek. Our review is confined to determining whether there is substantial credible evidence to support this decision. Helehan v. Ueland (1986), 725 P.2d 1192, 1194, 43 St.Rep. 1679, 1682. "In so determining, we must view the evidence in the light most favorable to the prevailing party." Id. "Further, the evidence may conflict with other evidence and still be deemed 'substantial.'" Id.

The majority reverses the District Court's judgment on the basis of "two factors which militate against a title by prescription in the Mielkes." First, the majority states that "a substantial question exists whether the State of Montana as owner had notice that the Mielkes were claiming adversely to it with respect to the waters in excess of those provided under Contract No. 90." (Emphasis added.) However, the record shows that the State had more than adequate notice. Mielke testified that he irrigated all of his land, 98.44 acres, every year since 1946, using about 200 miner's inches of Gird Creek water each year. He paid only for water sufficient to irrigate 50 acres [about 107 miner's inches]. Everytime he took water, he told the State what he was going to do. He opened his own headgate and turned water from Gird Creek into his ditch without permission.

Robert Lowery, who was the ditch rider for the State in the years 1946-1950, testified that his father, who was the manager of the Daly Ditch Project and also employed by the

State, told him that Mielke was entitled to free water. Robert Lowery also testified that Mielke was only to pay for a portion of the water used and the balance was a free water right. Lowery gave Mielke permission to operate the headgate in recognition of his free water right. Lowery only allowed people with a free water right to open their own headgates--others operating on a contract right were not allowed to open their own headgate. Based on the record and the District Court's decision, the term "free water" means water that Mielke had a right to use without charge as contrasted to water he paid for under his Contract No. 90.

In addition, and as the majority opinion stated, "there was a county road alongside [Mielkes'] acreage and the amount of their irrigation use was open and obvious to persons traveling along that road, including the ditch riders for the District; moreover, the District Headquarters was only a short distance from the Mielke farm." (Emphasis added.) Specifically, Mielke testified that District Headquarters was about one-third of a mile from his property and anyone driving on the road could see him, with a shovel, irrigating. He also testified that State Personnel, including the ditch riders, drove back and forth on the road. "[T]here ain't a day that goes by that there ain't some of their crew that goes over."

In conclusion, the record shows that the State had more than adequate notice.

The second factor, which, according to the majority opinion, militates against adverse use is that "plaintiffs paid the State . . . for the use of the water on their lands under a contract based upon 50 acres." (Emphasis added.) True, "under Contract No. 90 . . . Mielkes purchased . . .

- 18 -

water to irrigate 50 acres." (Emphasis added.) However, "Mielkes currently irrigate 98.44 acres." (Emphasis added.) Mielke testified that the most water he ever paid the State for was that sufficient to irrigate 50 acres. The ditch rider, a State employee, testified that: 1) Mielke was only to pay for a portion of the water he used; 2) the balance of the water was a free water right; 3) the free water was in addition to what Mielke got under Contract No. 90, and 4) Mielke had about a 100 inch free water right. It was this free water right of about 100 inches, not the purchased contract water, that Mielkes claimed on the basis of adverse possession. On that basis, the District Court granted such claim. Mielkes did not claim a right by adverse possession to water purchased from the State and used to irrigate 50 acres. Rather, they claimed a right, by adverse possession to approximately 100 miner's inches used to irrigate the remaining 48.44 acres of their land. Therefore, the fact that Mielkes paid for their contract water does not affect their claim of adverse possession of unpurchased non-contract water. Even the majority recognized this fact. They stated: "[Mielkes] were taking waters admittedly paid for by them as contract waters, and mixed with waters to which they now claim adverse use." The majority opinion also referred to "Mielkes' claim to title by prescription to the excess of water over their contract supply . . ." Furthermore, the majority questioned whether the State had notice that "the Mielkes were claiming adversely to it with respect to waters in excess of those provided under Contract No. 90."

The majority's last argument is that the "possession of Mielkes to the use of the water was not exclusive, but was in participation with the owner, the State of Montana." The

- 19 -

majority asserts that when two persons are in possession, the seisin follows the owner. In support, they cite Carley v. Davis (Okla. 1969), 452 P.2d 772; and Vider v. Zavislan (Colo. 1961), 362 P.2d 163. The defendant in Carley testified that his land was his continual place of work until he put it in Soil Bank and that his cattle were on the land all one summer. The plaintiff testified that there had never been a year since 1944, that he did not have possession of such tract. The appeals court affirmed the trial court's determination that plaintiff's claimed "exclusive" possession was shared by others and thus, not sufficient for prescriptive title purposes.

In Vider, the defendant held title to the disputed tracts of land and built his temporary drift fences upon such land. The plaintiff had actual or constructive possession of the land. Under such circumstances, the Colorado Court applied the following rule:

> [I]n case of a mixed or common possession of land by both parties to a suit, the law adjudges the rightful possession to him who holds legal title, and no length of time of possession can give title by adverse possession as against the legal title. (Emphasis added.)

These two out-of-state cases cited by the majority are not applicable to the case at hand. First, Carley and Vider adjudicate ownership of land. The water at issue in this case was not held in ownership by the State in its role as a sovereign. The State obtained the use of this water from Ravalli Land and Irrigation Co. and sold the use thereof, as a ditch company, in the same manner as its predecessor. Only the use of the water for purposes of sale was acquired by the State. Norman v. Corbley (1905), 32 Mont. 195, 203, 79 P. 1059, 1060. Secondly, there was no mixed or common

possession, by the Mielkes and the State, of the water at issue. Mielkes had exclusive use of the water. Mielke testified that he irrigated all of his land every year since 1946. There is no evidence that the State also used this water.

The District Court concluded that the Mielkes satisfied all requirements for adverse possession of a water right for 93 miner's inches. "This Court will not substitute its judgment for that of the trier of fact. We will consider only whether substantial credible evidence supports the findings and conclusions. Findings will not be overturned unless there is a clear preponderance of evidence against them, recognizing that evidence may be weak or conflicting, yet still support the findings." Jensen v. Jensen (Mont. 1981), 629 P.2d 765, 768, 38 St.Rep. 927, 930. Further, the appellant must overcome the presumption that the District Court's order is correct. Jensen v. Jensen (1979), 182 Mont. 472, 597 P.2d 733. "Finally, a reviewing court is never justified in substituting its discretion for that of the trial court." Marriage of Ward (Mont. 1986), 725 P.2d 1211, 1213, 43 St.Rep. 1825, 1827. "In determining whether the trial court abused its discretion, the question is not whether the reviewing court agrees with the trial court, but, rather, did the trial court in the exercise of discretion act arbitrarily without the employment of conscientious judgment or exceed the bounds of reason, in view of all the circumstances, ignoring recognized principles resulting in substantial injustice." Porter v. Porter (1970), 155 Mont. 451, 457, 473 P.2d 538, 541.

Because there is substantial evidence supporting the District Court's decision and because the District Court did

not act arbitrarily, I would affirm its decision granting Mielkes a water right of 93 miner's inches on the basis of adverse possession.

However, such decision brings up another question--whether adverse possession can be acquired against the State under the facts of this case. Mielkes argue that this issue was not set forth, before trial, as a defense and, therefore, was waived. The issue was raised in pre-decision briefs, but it was not ruled upon by the District Court. Therefore, I would remand this case for findings of fact and conclusions of law on the question of whether such defense was waived and, if not waived, for findings and conclusions on whether adverse possession can be obtained against the State under the facts of this case. See, State v. Shirokow (Cal. 1980), 605 P.2d 859, 866.

_____
Hon. Henry Loble, District
Judge, Sitting for Mr.
Justice John C. Harrison


Mr. Justice Frank B. Morrison, Jr.:

I concur in the foregoing dissent of Judge Loble.

_____
Justice